ACCEPTED
04-14-00796-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/6/2015 12:26:43 PM
KEITH HOTTLE
CLERK

**NO. 04-14-00796-CV**

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

LOCKHILL VENTURES, LLC,
*Defendant-Appellant*

v.

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP;
AND TEXAS ARDMOR MANAGEMENT, LLC,
*Plaintiffs-Appellees*

From the District Court of Bexar County
407th Judicial District of Texas
No. 2014-CI-10796

**BRIEF OF APPELLEES**

*Co-Counsel*
David L. Earl
State Bar No. 06343030
dearl@earl-law.com
EARL & ASSOCIATES, P.C.
Pyramid Building
601 NW Loop 410, Suite 390
San Antonio, Texas 78216
(210) 222-1500 (Office)
(210) 222-9100 (Fax)

KAREN L. LANDINGER
State Bar No. 00787873
klandinger@cbylaw.com
JAY K. FARWELL
State Bar No. 00784038
jfarwell@cbylaw.com
COKINOS, BOSIEN & YOUNG
10999 West IH-10, Suite 800
San Antonio, Texas 78230
(210) 293-8700 (Office)
(210) 293-8733 (Fax)

ATTORNEYS FOR APPELLEES,
ARD MOR, INC., TEXAS ARDMOR
PROPERTIES, LP AND TEXAS
ARDMOR MANAGEMENT, LLC

**ORAL ARGUMENT REQUESTED ONLY IF APPELLANT'S
REQUEST FOR ARGUMENT IS GRANTED**

# IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. **Defendant / Appellant**
   Lockhill Ventures, LLC

2. **Counsel for Defendant / Appellant**
   Lance H. "Luke" Beshara
   Randall A. Pulman
   Brandon L. Grubbs
   PULMAN, CAPPUCCIO, PULLEN,
     BENSON & JONES, LLP
   2161 N.W. Military Highway, Suite 400
   San Antonio, Texas  78213
   (210) 222-9494 (Office)
   (210) 892-1610 (Fax)
   lbeshara@pulmanlaw.com
   rpulman@pulmanlaw.com
   bgrubbs@pulmanlaw.com

3. *Plaintiffs / Appellees*
   ARD MOR, Inc.
   Texas ARDMOR Properties, LP
   Texas ARDMOR Management, LLC

4. **Counsel for Plaintiffs / Appellees**
   Karen L. Landinger
   Jay K. Farwell
   COKINOS, BOSIEN & YOUNG
   10999 West IH-10, Suite 800
   San Antonio, Texas 78230
   klandinger@cbylaw.com
   jfarwell@cbylaw.com

5. **Co-Counsel for Plaintiffs /Appellees**
   David L. Earl
   EARL & ASSOCIATES, P.C.
   Pyramid Building
   601 NW Loop 410, Suite 390
   San Antonio, Texas 78216
   (210) 222-1500 (Office)
   (210) 222-9100 (Fax)
   dearl@earl-law.com

6. **Interested Party at Trial Court**
   City of Shavano Park ("Shavano")

7. **Counsel for Interested Party at Trial Court**
   Patrick C. Bernal
   Elizabeth M. Provencio
   DENTON NAVARRO ROCHA BERNAL HYDE & ZECH
   A Professional Corporation
   2517 N. Main Avenue
   San Antonio, Texas 78212
   (210) 227-3243 (Office)
   (210) 225-4481 (Fax)
   patrick.bernal@rampage-sa.com
   elizabeth.provencio@rampage-sa.com

   /s/ *Karen L. Landinger*

   KAREN L. LANDINGER
   JAY K. FARWELL

   ATTORNEYS FOR APPELLEES, ARD MOR, INC., TEXAS ARDMOR PROPERTIES, LP AND TEXAS ARDMOR MANAGEMENT, LLC

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that the issues before the Court involve simple questions of law that are well settled and simple questions of fact that are readily answered by the appellate record. However, because Appellant has requested oral argument, Appellees request the opportunity to argue, but only if Appellant's request for argument is granted.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . v

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xvii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      Ard Mor Purchased Property in Shavano Park
           Subd Ut-16-A-1 That Was Bound by the Restrictive
           Covenants of Shavano Creek Commercial Properties. . . . . . . . . . . . 1

    II.     Lockhill Purchased Property in Shavano Park
           Subd Ut-16-A-1 That Was Bound by the Restrictive
           Covenants of Shavano Creek Commercial Properties. . . . . . . . . . . . 2

    III.    The Storage and Use of Explosives Is Prohibited by
           the Covenants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    IV.    Lockhill Plans to Build a Shell Gasoline Station on the
           Restricted Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    V.      Ard Mor Sought Injunctive Relief to Enforce the Covenants. . . . . . . 4

    VI.    Ard Mor Presented Evidence Demonstrating its Right
           to Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.  A Reviewing Court May Not Review the Merits of the
    Applicant's Case in an Interlocutory Appeal from
    a Temporary Injunction Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. The Appellate Record Demonstrates That Ample
    Evidence Was Presented to Support the Trial Court's
    Factual Findings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  Lockhill argued that it was undisputed that Lockhill
        and Ard Mor were neighbors and that evidence proving
        that point was not relevant. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.  Allegation on appeal. . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.  Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B.  The evidence established that the terms gasohol and
        gasoline are interchangeable in the United States and
        the evidence presented was specific to the product
        Lockhill intends to sell. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        1.  Allegation on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.  Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    C.  Appellant stipulated that it intended to build and
        operate a gas station and expert testimony
        established that explosive gas vapors are released
        during the operation of a gas station. . . . . . . . . . . . . . . . . . 17

        1.  Allegation on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . 17

        2.  Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

D.  Gasoline is a judicially recognized explosive and
    significant evidence was presented establishing the
    explosive nature of gasoline vapors released during
    the operation of a gas station. . . . . . . . . . . . . . . . . . . . . . . . . 20

    1.  Allegation on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . 20

    2.  Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.  The Covenants of the Shavano Commercial Property
      Partnership, Unit I Expressed a Clear Intent and Purpose
      to Benefit the Adjacent Landowners Through its Restrictions. . . . . 24

    A.  Evidence in the record tends to prove standing. . . . . . . . . . . . 27

    B.  Ard Mor's objections to the evidence of standing
        are matters reserved for the full trial on the merits. . . . . . . . . 28

    C.  Lockhill waived or invited any error regarding
        the lack of admission of sufficient evidence of
        standing by objecting to evidence of standing
        on relevancy grounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    D.  The court was entitled to take judicial notice of
        public records attached to pleadings. . . . . . . . . . . . . . . . . . . 34

    E.  The harm to Lockhill, which is the preservation of the
        status quo pending trial, has been prolonged by Lockhill. . . . 37

IV.  The Phrase, "Storage, handling or use of explosive material"
     Is Not Ambiguous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

V.  The Temporary Injunction Is Not a Prior Restraint. . . . . . . . . . . . . 41

CONCLUSION AND PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

APPENDIX

    Declaration of Protective Covenants. . . . . . . . . . . . . . . . . . . . . . . . . . Tab A

# INDEX OF AUTHORITIES

**CASES:**

*Al-Saady v. State*,
    No. 02-13-00186-CR, 2014 WL 3536806
    (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.). . . . . . . . . . . 21

*Amalgamated Acme Affiliates, Inc. v. Minton*,
    33 S.W.3d 387 (Tex. App.—Austin 2000, no pet.). . . . . . . . . . . . . . . . 11

*Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*,
    122 S.W.3d 378 (Tex. App.—Texarkana 2003, pet. denied). . . . . . . . . . . 25

*Antonov v. Walters*,
    168 S.W.3d 901 (Tex. App.—Fort Worth 2005, pet. denied). . . . . . . . . . . 25

*Atkins v. Fine*,
    508 S.W.2d 131 (Tex. Civ. App.—Austin 1974, no writ). . . . . . . . . . . . . 41

*Berry v. Segall*,
    315 S.W.3d 141 (Tex. App.—El Paso 2010, no pet.) . . . . . . . . . . . . . . . 32

*Bland Indep. Sch. Dist. v. Blue*,
    34 S.W.3d 547 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Bluestar Energy, Inc. v. Murphy*,
    205 S.W.3d 96 (Tex. App.—Eastland 2006, pet. denied). . . . . . . . . . . . . 30

*Breof BNK Texas, L.P. v. D. H. Advisors, Inc.*,
    370 S.W.3d 58 (Tex. App.—Houston [14th Dist.] 2012, no pet.). . . . . . . . 33

*Burbage v. Burbage*,
    447 S.W.3d 249 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Butnaru v. Ford Motor Co.*,
    84 S.W.3d 198 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*City of El Paso v. Fox*,
    No. 08-12-00264-CV, 2014 WL 5023089
    (Tex. App.—El Paso Oct. 8, 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 36

*City of San Antonio v. Humble Oil & Ref. Co.*,
    27 S.W.2d 868 (Tex. Civ. App.—San Antonio 1930, writ dism'd). . . . . . . 21

*City of Shavano v. Ard Mor, Inc.; Texas ArdMor Properties, LP,*
    *and Texas ArdMor Management, LLC*,
    Case No. 04-14-00781-CV.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Couch v. Southern Methodist University*,
    10 S.W.2d 973 (Tex. Comm'n. App. 1928, opinion adopted). . . . . . . . . . . 41

*Curlee v. Walker*,
    244 S.W. 497 (Tex. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Davis v. Huey*,
    571 S.W.2d 859, 862 (Tex. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Davis v. State*,
    227 S.W.3d 766 (Tex. App.—Tyler 2005),
    *aff'd*, 227 S.W.3d 733 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . 21, 24

*Escamilla v. Estate of Escamilla*,
    921 S.W.2d 723 (Tex. App.—Corpus Christi 1996, writ denied). . . . . . . . 35

*Estate of York*,
    934 S.W.2d 848 (Tex. App.—Corpus Christi 1996, writ denied) . . . . . 33, 36

*Fairfield v. Stonehenge Ass'n Co.*,
    678 S.W.2d 608 (Tex. App.—Houston [14th Dist.] 1984, no writ) . . . . . . 29

*Gigowski v. Russell*,
    718 S.W.2d 16 (Tex. App.—Tyler 1986, writ ref'd n.r.e.).. . . . . . . . . . . . . 39

*Giles v. Cardenas*,
  697 S.W.2d 422 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). . . . 25, 26

*Hendee v. Dewhurst*,
  228 S.W.3d 354 (Tex. App.—Austin 2007, pet. denied). . . . . . . . . . . . . . 40

*Henderson v. KRTS, Inc.*,
  822 S.W.2d 769 (Tex. App.—Houston [1st Dist.] 1992, no writ) . . . . . . . 42

*Hooper v. Lottman*,
  171 S.W. 270 (Tex. Civ. App.—El Paso 1914, no writ). . . . . . . . . . . . . . 26

*Houston v. Southwestern Bell Tel. Co.*,
  263 S.W.2d 169 (Tex. Civ. App.—Galveston 1953, writ ref'd). . . . . . . . . 24

*In re Department of Family and Protective Services*,
  273 S.W.3d 637 (Tex. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Estate of Hemsley*,
  No. 08-12-00368-CV, 2014 WL 5854220
  (Tex. App.—El Paso Nov. 12, 2014, no pet.). . . . . . . . . . . . . . . . . . . . . . 36

*Jim Rutherford Invs., Inc. v. Terramar Beach Comty. Ass'n*,
  25 S.W.3d 845 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) . . . . 39

*Johnson v. Johnson*,
  No. 03-02-00427-CVC, 2005 WL 3440773
  (Tex. App.—Austin Dec. 16, 2005, no pet.). . . . . . . . . . . . . . . . . . . . 33, 37

*Kinney v. Barnes*,
  443 S.W.3d 87 (Tex. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Knopf v. Standard Fixtures Co.*,
  581 S.W.2d 504 (Tex. Civ. App.—Dallas 1979, no writ). . . . . . . . . . . . . 41

*Lacy v. First Nat'l Bank*,
  809 S.W.2d 362 (Tex. App.—Beaumont 1991, no writ). . . . . . . . . . . . . . 36

*Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*,
  919 S.W.2d 924 (Tex. App.—Houston [14th Dist.] 1996, no writ)....... 11

*Langdale v. Villamil*,
  813 S.W.2d 187 (Tex. App.—Houston [14th Dist.] 1991, no writ).... 36, 37

*Lehmann v. Wallace*,
  510 S.W.2d 675 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)... 26

*Liverpool & London & Globe Ins. Co. v. Currie*,
  234 S.W. 232 (Tex. Civ. App.—El Paso 1921, writ ref'd). ........... 21

*Lombardo v. City of Dallas*,
  47 S.W.2d 495 (Tex. Civ. App.—Dallas 1932, writ granted),
  *aff'd*, 73 S.W.2d 475 (Tex. 1934)................................ 21

*Matuszak v. Houston Oilers, Inc.*,
  515 S.W.2d 725 (Tex. Civ. App.—Houston [14th Dist.] 1974,
  no writ). ...................................................... 11, 24

*McCulloch v. State*,
  740 S.W.2d 74 (Tex. App.—Fort Worth 1987, pet. ref'd) ............ 20

*Menna v. Romero*,
  48 S.W.3d 247 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.)... 42, 43

*Merchant v. Houston Gas & Fuel Co.*,
  78 S.W.2d 656 (Tex. Civ. App.—Galveston 1935, writ dism'd) ........ 21

*Millwrights Local Union No. 2484 v. Rust Eng'g Co.*,
  433 S.W.2d 683 (Tex. 1968)..................................... 36

*Nelkin v. Young*,
  397 S.W.2d 956 (Tex. App.—Texarkana 1965, writ ref'd n.r.e.). .... 19, 23

*Nesmith v. Magnolia Petroleum Co.*,
  82 S.W.2d 721 (Tex. Civ. App.—Austin 1935, no writ) .............. 20

*Northeast Tex. Motor Lines v. Hodges*,
　158 S.W.2d 487 (Tex. 1942)................................. 30

*Pirtle v. Gregory*,
　629 S.W.2d 919 (Tex. 1982)................................ 33

*Ramirez v. State*,
　973 S.W.2d 388 (Tex. App.—El Paso 1998, no pet.). ... ............. 30

*RP&R, Inc. v. Territo*,
　32 S.W.3d 396 (Tex. App.—Houston [14th Dist.] 2000, no pet.). . ...... 23

*Scarbrough v. Metro. Transit Auth. of Harris County*,
　326 S.W.3d 324 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)..... 39

*Scott v. Champion Bldg. Co.*,
　28 S.W.2d 178 (Tex. Civ. App.—Dallas 1930, no writ) ............... 21

*Scott v. Rheudasil*,
　614 S.W.2d 626 (Tex. Civ. App.—Fort Worth 1981, no writ). ......... 29

*Settegast v. Foley Bros. Dry Goods Co.*,
　270 S.W. 1014 (Tex. 1925)................................. 41

*Shamrock Fuel & Oil Sales Co. v. Tunks*,
　406 S.W.2d 483 (Tex. Civ. App.—Houston 1966, no writ)............. 21

*Sheehan v. Levy*,
　215 S.W. 229 (Tex. Civ. App.—Dallas 1919, writ granted),
　*aff'd*, 238 S.W. 900 (Tex. Comm'n App. 1922, opinion adopted)........ 24

*Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*,
　80 S.W.3d 601 (Tex. App.—Houston [1st Dist.] 2002, no pet.). ..... 10, 11

*Texas Real Estate Comm'n v. Nagle*,
　767 S.W.2d 691 (Tex. 1989)................................ 35

*Texas State Bd. of Educ. v. Guffy*,
       718 S.W.2d 48 (Tex. App.—Dallas 1986, no writ). . . . . . . . . . . . . . . . . 36

*Thomas v. Beaumont Heritage Soc'y*,
       296 S.W.3d 350 (Tex. App.—Beaumont 2009, no pet.). . . . . . . . . . . . . . 15

*Tigua Gen. Hosp., Inc. v. Feuerberg*,
       645 S.W.2d 575 (Tex. App.—El Paso 1982, no writ) . . . . . . . . . . . . . . . 36

*Tittizer v. Union Gas Corp.*,
       171 S.W.3d 857 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*,
       965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). . . . . . 19

*Transport Company of Texas v. Robertson Transports, Inc.*,
       261 S.W.2d 549 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Venus v. State*,
       282 S.W.3d 70 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Winfield v. Lamoyne*,
       No. 05-94-01851-CV, 1995 WL 634161
       (Tex. App.—Dallas Oct.16, 1995, writ dism'd) (mem.op.) . . . . . . . . . . . . 39

## STATUTES AND RULES:

29 CFR 1910.106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Tex. R. App. P. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Tex. R. App. P. 44.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Tex. R. Evid. 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

NO. 04-14-00796-CV

IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT
SAN ANTONIO, TEXAS

LOCKHILL VENTURES, LLC,
*Defendant-Appellant*

v.

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP;
AND TEXAS ARDMOR MANAGEMENT, LLC,
*Plaintiffs-Appellees*

From the District Court of Bexar County
407th Judicial District of Texas
No. 2014-CI-10796

**BRIEF OF APPELLEES**

TO THE FOURTH COURT OF APPEALS:

ARD MOR, INC.; TEXAS ARDMOR PROPERTIES, LP; AND TEXAS

ARDMOR MANAGEMENT, LLC (collectively "Ard Mor" or "Appellees"), file this

Brief of Appellees.

# ISSUES PRESENTED

The issues presented for review are as follows:

(1)   Whether or not the trial court abused its discretion by granting temporary injunctive relief to preserve the status quo of the parties pending a full trial on the merits?

(2)   Whether or not a trial court abuses its discretion by finding facts in favor of injunctive relief when conflicting evidence is presented?

(3)   Whether or not Lockhill's admission that Ard Mor is an adjoining property owner is some evidence that Ard Mor owns property in proximity to Lockhill?

(4)   Whether or not gasoline is a judicially recognized explosive?

(5)   Whether or not a trial court abuses its discretion by taking judicial notice of public records?

(6)   Whether a trial court abuses its discretion by taking notice of the documents contained in its own file?

(7)   Whether an appellant can complain about the sufficiency of evidence when it objected to the allegedly missing evidence as being irrelevant?

(8)   Whether standing to enforce covenant restrictions is a factual question that must be established during the trial of the merits?

(9)   Whether or not Lockhill established that it was harmed by the trial court's finding that Ard Mor has standing when public records contained in the court's own file establish standing?

(10)   Whether or not a temporary injunction to enforce an agreed upon covenant constitutes a prior restraint?

**STATEMENT OF FACTS**

**I.** **Ard Mor Purchased Property in Shavano Park Subd Ut-16-A-1 That Was Bound by the Restrictive Covenants of Shavano Creek Commercial Properties.**

Ard Mor is the owner and operator of the Luv-N-Care Child Development Center located at 13211 Huebner Rd., San Antonio, Texas, and legally described as CB 5938 Lot 1814 Shavano Park, Subd Ut-16-A-1, Bexar County, Texas. CR.I:2, 10; CR.II:115-121; RR.VI:PX3. Ard Mor purchased the property from Shavano Creek Commercial Properties for the express purpose of building the child development center in 2001. CR.I:2, 10; CR.II:115-121. The property was encumbered by the restrictive covenants of Shavano Creek Commercial Partnership Unit 1, Ltd. CR.II:88-113. (Tab A).

In its covenants, Shavano Creek Commercial Properties expressed its desire for the systematic and orderly development and use of the property in a manner beneficial to the adjoining residential area. CR.II:88. In that regard, the covenants expressly require that the portion of the property purchased by Cooke that runs closest to Huebner Road be used for a driveway to service the property and the remaining Shavano Creek Commercial Properties. CR.II:93. The covenants further prohibit certain activities such as the sale of certain motor vehicles, any activity deemed to be

1

offensive by virtue of omitting odors and fumes, and the storage or use of explosive material. CR.II:93.

Luv-N-Care opened its doors at its current location in July, 2002. RR.II:25-26. Since that time, it has operated continuously and currently services approximately 250 children between the hours of 6:30 a.m. and 6:30 p.m., Monday through Friday. Supp.RR.II:25. The age of the children range from newborn to 13 years. RR.II:25.

## II. Lockhill Purchased Property in Shavano Park Subd Ut-16-A-1 That Was Bound by the Restrictive Covenants of Shavano Creek Commercial Properties.

In 2014, Lockhill Ventures, LLC., Appellant in this matter, purchased two properties adjacent to the Luv-N-Care Child Development Center, which are also located in Shavano Park, Subdivision 16-A-1. CR.I:77, 96-98; RR.VII:PX2. The properties are also encumbered by the restrictive covenants of Shavano Creek Commercial Partnership Unit 1, Ltd. CR.I:102; RR.VII:PX1. The express intent and purpose of the covenants is to "ensure that the use and development of the Property and the improvements constructed thereon are not incompatible with any adjoining commercial properties and the residential neighborhoods." CR.I:102; RR.VII:PX1. The same stated purpose of the covenants is integrated within its requirement that all development plans be approved. CR.II:67; RR.VII:PX1.

## III. The Storage and Use of Explosives Is Prohibited by the Covenants.

The covenants provide examples of permitted uses of the property, which include multi-family units, schools, churches, and health care facilities. CR.I:105; RR.VII:PX1. The covenants also expressly prohibit uses of the property that are prohibited by zoning laws or governmental regulations. CR.I:105; RR.VII:PX1. Specifically, the covenants limit development of the disputed property to uses permitted by Shavano's B-2 zoning classification. CR.I:110; RR.VII:PX1. The covenants also prohibit a number of enumerated activities, such as the sales of certain motor vehicles, the "[s]torage, handling or use of explosive material," and any use that is offensive because of the discharge of fumes. CR.I:105; RR.VII:PX1.

## IV. Lockhill Plans to Build a Shell Gasoline Station on the Restricted Property.

Despite the express language contained in the restrictive covenants, Lockhill purchased the property with the intent to build a Shell gas station. RR.IV:25. Sean Nooner, the President of Lockhill, was undeterred by the fact that a gas station is not listed as a permitted use by Shavano's B-2 zoning classification, which is specified by the covenants as the applicable zoning law. CR.I:105, 109; RR.VII:PX10-11. Nooner was also undeterred by the fact that gasoline vapors are explosive and are created in the operation of a gas station, thereby rendering a gas filling station

3

specifically prohibited by the covenants. CR.I:105; RR.VII:PX7-8. Despite his knowledge of the restrictions, Nooner expressed that he could do anything he wanted with the property once he purchased it. RR.VI:13-14.

## V. Ard Mor Sought Injunctive Relief to Enforce the Covenants.

Ard Mor sought injunctive relief to halt development and enforce the restrictions on the Lockhill property. CR.I:1, 206. In its pleadings, Ard Mor requested a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, seeking a declaration that the use of the Lockhill property as a gas filling station would violate both the restrictive covenants and Shavano's ordinances. CR.I:209-212. Relative to this appeal, Ard Mor asked the trial court to declare that Lockhill's intended use of the property to dispense gasoline was prohibited because:

a. Use of the premises for storage, handling or use of gasoline is prohibited by paragraph 4(b)(ii) of the covenants because gasoline is or can be an explosive material;

b. Use of the premises as a gasoline station is prohibited by the covenants because the risk of the emission or discharge of fumes and odorous matter;

c. Use of the premises as a gasoline station will involve business activities, except for outside dining, that are not completely contained within an enclosed structure or court in violation of City of Shavano Ordinance 36-39(6) and (7); and

d. Use of the property as a gas station is not a permitted use under any zoning category in the City of Shavano Park.

CR.I.210.[1] Ard Mor's request for relief included a request for the cessation of the development, planning, and construction of a gas station on the properties adjoining the Luv-N-Care Child Development Center. CR.I:212-213; CR.II:5-9.

## VI. Ard Mor Presented Evidence Demonstrating its Right to Injunctive Relief.

On July 9, 2014, the trial court granted a temporary restraining order against Lockhill that prohibited the commencement or continuation of development or construction on the Lockhill property. CR I:91. The trial court heard testimony and considered evidence on the temporary injunction over a four day period. RR.II:1; RR.III:1; RR.IV:1; RR.V:1. During the four days of testimony, Ard Mor presented evidence of the following:

- Ard Mor and Lockhill are adjacent landowners bound by nearly identical covenants of Shavano Creek Commercial Partnership Unit 1, Ltd. CR.I:44, 248, 262, 264, 319-324, 265, 337; CR.II:45, 88-113, 115-212; RR.II:25, 28, 43, 50, 101; RR.IV:55; RR.VII:Exhibit 13.

- Lockhill purchased its property subject to binding restrictive covenants. CR.I:102-105, 291-318; RR.VII:Exhibit 1.

---

[1] Ard Mor also sought declarations that: (i) Shavano's ordinances are void due to their admitted ambiguity; (ii) the Development Agreement and the ordinance annexing the disputed property are void contract zoning; (iii) the Development Agreement violates existing ordinances; (iv) Shavano inconsistently applies its ordinances in violation of equal protection; and (v) the actions of the City of Shavano Park and its officials in contracting with Lockhill were *ultra vires*. CR.II:5-6. Those issues are central to a parallel, but separate, appeal brought by the City of Shavano Park from the trial court's order denying Shavano's plea to the jurisdiction. *See City of Shavano v. Ard Mor, Inc.; Texas ArdMor Properties, LP, and Texas ArdMor Management, LLC*, Case No. 04-14-00781-CV.

- The covenants restrict the use of the property to those permitted by B-2 zoning. CR.I:110; RR.VII:PX.1.

- Gas stations are not listed in Shavano's B-2 zoning tables. CR.I:105, 109; RR.VII:PX.9-10.

- The covenants expressly prevent the use or storage of explosive material on the property. CR.I:105; RR.VII:PX.1.

- Lockhill planned to build a Shell gas station on the restricted property which necessarily included gasoline tanks. CR.I:121, 127; RR.II:16, 17, 24, 58, 66; RR.III:40; RR.IV:76, 78; RR.V:15; RR.VII:DX5, CX3.

- Shell gas is also known as gasohol. RR.II:66, 79.

- All gas stations in the United States sell gasohol. RR.II:79; RR.VII:PX.7.

- The terms gas, gasoline, and gasohol are interchangeable. RR.II:79; RR.VII:PX.7.

- The operation of all gas stations results in the release of gas fumes and vapors. RR.II:83, 86, 98.

- Gasoline or gasohol fumes are explosive. RR.II:41, 57, 64, 66-67, 77-79, 83, 86, 88, 89, 95-97, 98, 105; RR.III:44; RR.V:23, 65-68; RR.VII:Exhibits 6-8.

After hearing the evidence and argument of counsel, the trial court issued an Order for Temporary Injunction. CR.II:128, 136-139. In its order, the trial court found that Lockhill was planning the construction of a gas station and that such use of the property was prohibited by applicable zoning laws or other governmental regulations. CR.II:137. The trial court also found that gasoline would be stored or handled on the

property if development continued and that such use would violate the applicable declaration of protective covenants. CR.II:137. Further, the trial court found that Ard Mor had standing to enforce the restrictive covenants. CR.II:137.

Lockhill was ordered to cease and desist from commencing or continuing the development of the property, including seeking or applying for approval from Shavano, or any other governmental authority, to use its property to store or sell gasoline. CR.II:138. Lockhill did not secure findings of fact or conclusions of law with respect to the trial court's order.

## SUMMARY OF THE ARGUMENT

In this interlocutory appeal, the sole issue before this Court is whether or not the trial court abused its discretion in granting a temporary injunction to maintain status quo pending a final trial. The central focus of Lockhill's complaint concerns the sufficiency of the evidence to support the trial court's ruling. Lockhill concedes that there is evidence to support the trial court's findings that gasoline vapors are explosive under some conditions and that Lockhill intends to store gasoline on its property. However, Lockhill contends that such evidence does not support the grant of a temporary injunction because those findings were insufficiently specific to Lockhill's intended use of the gasoline.

Even a brief review of the record reveals that significant evidence was presented on all of the challenged grounds. In fact, Lockhill stipulated and testified through its representative that it intended to construct a Shell gasoline station and sell Shell gasoline on its property. Ard Mor offered significant testimony, both documentary and in the form of expert testimony, to establish that the mere operation of a Shell gas station – or any gas station – would necessarily result in the release of gasoline or gasohol vapors which are a known explosive. Although Lockhill disputed that gasoline vapors are an explosive, a conflict in the evidence does not provide grounds for the dissolution of an injunction.

Lockhill also challenges the sufficiency of the evidence to support the trial court's finding of Ard Mor's standing to enforce the restrictive covenants. However, Lockhill's complaint regarding standing is premature. Lockhill barely referenced the issue of standing during the four days of hearings. Instead, and oddly enough, Lockhill vigorously objected any time that Ard Mor offered evidence establishing its right to enforce the covenants. In fact, as to evidence of ownership of property, counsel for Lockhill argued that it was undisputed that Lockhill and Ard Mor were adjoining commercial properties, but that such fact was irrelevant to the issue before the court. By objecting to relevant evidence obscuring its standing objection, this issue should be deemed waived.

Moreover, it is undisputed that there is significant evidence in the appellate record that establishes Ard Mor's standing. Lockhill does not dispute the existence or veracity of that evidence. Instead, Lockhill's complaints are narrowly crafted to assert that insufficient documentation of undisputed facts was formally admitted during the temporary injunction hearing. However, the trial court had the documentary evidence, which consisted of public records, in its own file, which were argued and considered by all parties. Ard Mor requested that the court take judicial notice of such documents, which both the trial court and this Court can do.

Lockhill also raises a constitutional argument, which likewise was not developed during the temporary injunction hearing. Specifically, Lockhill suggests that the restrictive covenants amount to a restraint on its freedom of speech. However, the law is well established that a party cannot be deprived through the enforcement of its own agreements — in this case, a restrictive covenant. Lockhill's constitutional arguments, even if before this Court, lack merit.

What Lockhill seemingly fails to recognize is that the only relief that Lockhill can obtain through this appeal is either the dissolving of the injunction or a remand to the trial court for further proceedings. Considering that the date set for trial on the merits has passed as a result of this appeal and Lockhill's multiple requests for extensions, Lockhill's procedural objections have done nothing more than extend the

9

status quo far beyond the date set by the court. Further, considering that Lockhill has not shown that Ard Mor will not prevail at trial, Lockhill has not shown how it would have benefitted by being allowed to proceed towards constructing improvements that would have to be removed, resulting in waste. Lockhill has shown no error and demonstrates no harm beyond the harm that it has inflicted upon itself.

## ARGUMENT AND AUTHORITIES

**I.      A Reviewing Court May Not Review the Merits of the Applicant's Case in an Interlocutory Appeal from a Temporary Injunction Order.**

In a hearing on an application for a temporary injunction, the only question before the court is the right of the applicant to preserve the status quo of the subject matter of the suit pending a final trial of the case on its merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To warrant the issuance of the writ, the applicant need only show a probable right and a probable injury. He is not required to establish that he will finally prevail in the litigation. *Transport Company of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953). For that reason, a reviewing court may not review the merits of the applicant's case in an interlocutory appeal from a temporary injunction order. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

10

Whether to grant a temporary injunction lies within the trial court's sound discretion. *Tel. Equip. Network*, 80 S.W.3d at 607. A reviewing court will not reverse the trial court's order unless the trial court's action was "so arbitrary that it exceeded the bounds of reasonable discretion." *Id*. Evidence is to be viewed in the light most favorable to the trial court's order, indulging every reasonable inference in favor of affirming the trial court's decision. *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 392 (Tex. App.—Austin 2000, no pet.); *Tel. Equip. Network*, 80 S.W.3d at 607. A reviewing court may not substitute its judgment for that of the trial court by vacating or modifying an injunction simply because it would have decided the issue differently. *Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*, 919 S.W.2d 924, 926 (Tex. App.—Houston [14th Dist.] 1996, no writ).

## II.    The Appellate Record Demonstrates That Ample Evidence Was Presented to Support the Trial Court's Factual Findings.

Lockhill's underlying theme throughout its brief concerns sufficiency of the evidence. However, assertions of insufficient evidence are improper in an appeal from an order granting or denying a temporary injunction. *See Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725, 728 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ). The only evidentiary challenge appropriate in an appeal from a temporary injunction is a no evidence challenge. *Id.* To the extent that Lockhill is asserting a no evidence

11

challenge, even a brief review of evidence presented during the four-day hearing demonstrates that the trial court had ample evidence before it to support its factual findings. Given the abundance of evidence in the record, Ard Mor presents some of the evidence refuting Lockhill's no evidence challenges as succinctly as possible below.

> **A. Lockhill argued that it was undisputed that Lockhill and Ard Mor were neighbors and that evidence proving that point was not relevant.**

> **1. Allegation on appeal.**

"There is no evidence in the record that any of Appellees own any real property, much less: (1) property near the LV Property (referenced in the proceeding as being a childcare center)."

Appellant's Brief at 1, and

"Appellees presented no evidence of what real property they allege to own."

Appellant's Brief at 5.

> **2. Evidence.**

Ard Mor's verified petition and application for a restraining order alleges that Ard Mor is the owner and operator of the Luv-N-Care Child Development Center located at 13211 Huebner Rd., San Antonio, Texas, and legally described as CB 5938 Lot 1814 Shavano Park, Subd Ut-16-A-1, Bexar County, Texas. CR.I:2, 10;

CR.II:115-121. The petition is supported by the affidavit of Paul M. Cooke, which provides:

> "Lockhill Ventures, LLC took the property located adjacent to the Luv-N-Care Child Development Center subject to the Declaration of Protective Covenants as attached to Plaintiff's Original Petition as Exhibit D. The adjoining land owners have taken property with similar, if not identical covenants."

CR.I:10. The affidavit also confirmed the factual statements contained in the petition which included the averment of the location of Ard Mor's property. CR.I:2, 10; CR.II:115-121. Lot 1814, which is Lockhill's lot and which is identified throughout the pleadings and papers, appears on the land title surveys attached to the Development Agreement at issue. CR.I:44, 248, 262, 264, 265, 337; CR.II:45; RR.VII:PX3.

A copy of the restrictive covenants applicable to Ard Mor was also filed and is a part of the appellate record. CR.I:291-318. The covenants are supported by a number of exhibits, including field notes that describe Ard Mor's property and the Cooke plans for the Luv-N-Care Child Development Center. CR.I:319-321; CR.II:116-118. Drawings and the plats and plans are also attached as exhibits. CR.I:322-324; CR.II:119-120.

In addition to the documentary evidence, Lockhill confirmed the location of Ard Mor's property. RR.II:43. Witnesses for Ard Mor testified to the location of Ard

Mor's day care facility. RR.II:25, 50, 101. The witnesses also testified that the day care facility was an adjoining property that was connected to the site of the proposed gas station. RR.II:25-26, 41, 50-51, 56.

Sean Nooner, the President of Lockhill, testified that Ard Mor is an adjoining commercial property. RR.IV:15. Nooner even pointed to the location of the Ard Mor property on a map, indicating its location as an adjacent property. RR.IV:55. Counsel's arguments and questioning during the hearing confirmed the location of Ard Mor's property. RR.II:13, 27, 36, 43.

Significantly, during the presentation of evidence, counsel for Lockhill repeatedly and consistently objected to evidence of "how the adjoining property is used" and that Ard Mor was "an adjoining property" and part of "three adjoining tracts of land that are subject to the declarations of covenant," asserting that such evidence was irrelevant to the proof necessary to establish Ard Mor's right to a temporary injunction. RR.II:28-35.

Indeed, counsel for Appellant argued, "[w]e know that there's a day care center in proximity, and the Court doesn't need to know anything more. And, quite frankly, the Court doesn't even need to know that." RR.II:34, 35. Counsel for Lockhill continued, "[i]t has nothing to do with the neighbors." RR.II:35.

14

When, as here, the trial court has not entered findings of fact or conclusions of law, the evidence is viewed in the light most favorable to the trial court's order and indulges every reasonable inference in its favor. *See Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 352 (Tex. App.—Beaumont 2009, no pet.). All findings necessary to support the trial court's judgment are presumed. Lockhill does not dispute that Ard Mor is an adjoining business owner, nor did Lockhill present any evidence to indicate that Ard Mor is not an adjoining landowner in Shavano Park, Subd Ut-16-A-1. For purposes of the temporary injunction, the above-cited and unchallenged evidence is sufficient to show that, upon a trial on the merits, Ard Mor will be able to fully establish standing to enforce the covenants.

**B.     The evidence established that the terms gasohol and gasoline are interchangeable in the United States and the evidence presented was specific to the product Lockhill intends to sell.**

**1.     Allegation on Appeal.**

"There was no evidence: (1) that gasoline (as opposed to gasohol and diesel) or gasoline vapors would be stored, handled or used on the LV Property."

Appellant's Brief at 8.

**2.     Evidence.**

Nooner confirmed that he intends to build a Shell gas station on the property next to Ard Mor's. RR.II:16, 17, 24, 58, 66. Lockhill introduced its request for

15

approval of plans during the hearing. RR.VII:Exhibit 5. The plans specifically reference Nooner's intent to place a Shell sign on the proposed building. RR.VII:Exhibit 5, A-1-1, A-1-2, A-1-7, A-1-8. Nooner also confirmed his intent to build gasoline tanks on the property. RR.IV:76. Nooner testified that the tanks would contain gasoline and diesel. RR.IV:78.

The Material Safety Data Sheet (MSDS) for Shell gasoline was admitted into evidence. RR.VII:Exhibit 7, p. 1. The product code includes all forms of gasohol. RR.VII:Exhibit 7, p. 1. The MSDS warns of the explosive nature of gasoline (or gasohol). RR.VII:Exhibit 7, p. 4.

Ard Mor's expert, Dennis Caputo, reviewed the MSDS regarding Shell Corporation's products. RR.II:66. The MSDS covers several grades of gasoline, including premium gasohol, midgrade gasohol, and regular gasohol. RR.II:78. Caputo explained that gasohol is what is sold as gasoline within the United States and that the name gasoline was commonly used to describe the gasohol products utilized in the market. RR.II:79. The MSDS and Caputo's testimony were specific as to gasohol, and even more specific as to the gasohol sold by Shell. RR.II:79.

Lockhill's attempts to claim that there is a difference between the gasohol that would be stored and used on the property and gasoline is firmly refuted by the evidence. The argument's disingenuous nature is apparent given the fact that

Lockhill's own counsel framed the issue before the court as whether or not gasoline (as opposed to gasohol) is an explosive material, and whether or not a store that sells gasoline is prohibited by the covenants. *See, e.g.*, RR.II:6, 15, 27, 32, 33, 52, 53, 68, 71, 72, 73, 74, 75, 107; RR.III:10-35, 48, 49, 135, 151, 184; R.IV:130. Ard Mor offered significant evidence that confirmed Lockhill planned to sell and use Shell gasoline, also known as Shell gasohol, on the disputed property, and Lockhill never disputed or discredited such evidence.

**C. Appellant stipulated that it intended to build and operate a gas station and expert testimony established that explosive gas vapors are released during the operation of a gas station.**

**1. Allegation on Appeal.**

"There is no evidence in the record regarding the conditions under which Appellant would store gasohol."

Appellant's Brief at 2, and

"There is no evidence in the record that the vapors of gasohol are explosive under the conditions under which Appellant proposes to store gasohol."

Appellant's Brief at 3.

**2. Evidence.**

Lockhill stipulated that it intended to build a Shell gas station. RR.III:40. Nooner also characterized his existing and proposed businesses as gasoline stations.

RR.IV:8, 16, 17, 25, 28, 39. One out of every twenty-three gas stations experiences a fire or explosion associated with its operation. RR.II:67.

It is undisputed that gasoline stations have gasoline tanks to store the gasoline, or gasohol and diesel. RR.II:96. As the liquid is disbursed through normal usage, it is replaced by gas vapors. RR.II:97. Ard Mor's expert, Dennis Caputo, testified about the ability of gasoline vapors to leak and the explosive threat involved in such cases. RR.II:64. Caputo has been personally involved in hundreds of cases involving such leaks. RR.II:64.

Caputo also testified that the operation of a gasoline station releases vapors that are explosive. RR.II:83. Indeed, gas stations cannot operate without generating gas vapors. RR.II:86. Caputo testified that gas vapors are explosive under many circumstances, including flames, sparks, heat, and static discharge. RR.II:83. Gasoline vapors are released any time that someone places gasoline into their vehicles. RR.II:98. This release of vapors creates a risk of explosion. RR.II:98.

One of the several ways in which gasoline vapors can be ignited is through static electricity which can ignite or cause vapors to explode. RR.II:88-89. Caputo further explained that gasoline can even explode spontaneously under certain conditions. RR.II:105. The product information sheet for the Shell product to be sold by Nooner warns that:

"All it takes to create a violent explosion is fuel vapors, enough oxygen and a source of ignition, hyphen, like a spark from a cigarette, comma, a hot exhaust pipe, comma, faulty wiring, comma, or a wisp of vapor reaching the open flame of a pilot light or a match."

"Even something as seemingly innocuous as a spark from a static electricity discharge can cause gasoline vapors to explode if it happens near an atmosphere source. Remember that when you move around in your vehicle you can build up a static electricity charge in your body."

RR.III:44.

Although Lockhill's expert claimed that gasoline and gasoline vapors were actually stable, the trial court functions as the fact finder in a temporary injunction hearing and an abuse of discretion does not exist where the trial court bases its decision on conflicting evidence. *Nelkin v. Young*, 397 S.W.2d 956, 958 (Tex. App.—Texarkana 1965, writ ref'd n.r.e.). A reviewing court must draw all legitimate inferences from the evidence in the light most favorable to the trial court's order granting a temporary injunction. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd). There was ample evidence submitted to support the trial court's findings that gas or gas vapors would be used on the disputed property in a manner that could lead to an explosion.

**D. Gasoline is a judicially recognized explosive and significant evidence was presented establishing the explosive nature of gasoline vapors released during the operation of a gas station.**

**1. Allegation on Appeal.**

"There was no evidence: . . . (2) that the vapors of gasohol or diesel can explode under any circumstances; (3) of the actual conditions under which gasoline vapors are actually explosive; or (4) of the conditions which Appellant proposed to store, handle or use gasohol or diesel were conditions such as to render gasoline vapors explosive."

Appellant's Brief at 8-9.

**2. Evidence.**

Gasoline is designed to explode. RR.II:95. It is the very explosive nature of gasoline that makes is a useful substance for our vehicles. RR.II:95. Indeed, the explosive property of gasoline is so well known that it has been judicially noticed for nearly 100 years. *See McCulloch v. State*, 740 S.W.2d 74, 76 (Tex. App.—Fort Worth 1987, pet. ref'd) ("A court of appeals may take judicial notice of facts which are notorious, well known or easily ascertainable. Therefore, we take judicial notice of the explosive nature of gasoline.") (internal citation omitted); *Nesmith v. Magnolia Petroleum Co.*, 82 S.W.2d 721, 723 (Tex. Civ. App.—Austin 1935, no writ) ("The volatile, inflammable, and explosive properties of gasoline are matters of most general common knowledge. It is but stating the obvious to aver that every normal person of high-school age or over, of average mentality and ordinary experience, is

20

presumed to have a general practical knowledge of these properties."); *Merchant v. Houston Gas & Fuel Co.*, 78 S.W.2d 656, 658 (Tex. Civ. App.—Galveston 1935, writ dism'd) ("[T]he explosion may have been caused by vapor or gas emanating from gasoline which is, as a matter of common knowledge, a highly explosive and inflammable substance."); *Scott v. Champion Bldg. Co.*, 28 S.W.2d 178, 180 (Tex. Civ. App.—Dallas 1930, no writ) ("Courts judicially know that gasoline and other inflammable petroleum products are explosive and constantly menace the safety of persons and property, wherever stored or kept for sale.").[2]

Ample evidence regarding the explosive nature of gasoline vapors, under the conditions of use proposed by Lockhill, supports the trial court's findings. In addition to the evidence outlined in sections II.B. and II.C., Lockhill's expert confirmed that "Shell gasoline" was the product that would be sold at Lockhill's proposed gas station. RR.V:15. The warning signs displayed at Nooner's existing gasoline and Shell stations warn of the risk of explosion. RR.III:37, 44, 46; RR.IV:28, 49.

---

[2] *See also Al-Saady v. State*, No. 02-13-00186-CR, 2014 WL 3536806, at *4 (Tex. App.—Fort Worth July 17, 2014, no pet.) (mem. op.); *Davis v. State*, 227 S.W.3d 766, 769 (Tex. App.—Tyler 2005), *aff'd*, 227 S.W.3d 733 (Tex. Crim. App. 2007); *Shamrock Fuel & Oil Sales Co. v. Tunks*, 406 S.W.2d 483, 488 (Tex. Civ. App.—Houston 1966, no writ); *Lombardo v. City of Dallas*, 47 S.W.2d 495, 498 (Tex. Civ. App.—Dallas 1932, writ granted), *aff'd*, 73 S.W.2d 475 (Tex. 1934); *City of San Antonio v. Humble Oil & Ref. Co.*, 27 S.W.2d 868, 869 (Tex. Civ. App.—San Antonio 1930, writ dism'd); *Liverpool & London & Globe Ins. Co. v. Currie*, 234 S.W. 232 (Tex. Civ. App.—El Paso 1921, writ ref'd).

A Shell gasoline pamphlet regarding its gasoline products was admitted into evidence. RR.VII:Exhibit 8, pp. 2, 4. The pamphlet acknowledges that accidents have happened and warns of the potential for a violent explosion. RR.VII:Exhibit 8, pp. 2, 4. The pamphlet further admonishes that, "[a] simple gasoline splash or spill could lead to an explosion, fire and possible serious injury." RR.VII:Exhibit 8, p. 6. Plaintiff's Exhibit 6, a warning notice from a shell gasoline station that advises that gasoline vapors may explode, was also admitted into evidence. RR.VII:6.

The MSDS for Shell gasoline was also admitted into evidence. RR.VII:Exhibit 7, p. 1. The product code includes all forms of gasohol. RR.VII:Exhibit 7. p. 1. The MSDS expressly warns of the explosive nature of gasoline (or gasohol). RR.VII:Exhibit 7, p. 4.

In addition to the documentary evidence, Ard Mor presented expert testimony regarding the explosive nature of gasoline vapors. RR.II:77. Lockhill's expert could not negate the possibility of explosion as outlined in the Shell product information documents. RR.V:21, 23. Specifically, Lockhill's expert could not dispute that Shell gasoline has explosive properties. RR.V:23. Even lay witnesses testified about their personal knowledge of explosions at gas stations and the explosive nature of gasoline. RR.II:41, 57.

22

Lockhill argues that the trial court abused its discretion in finding that gasoline is an explosive material because it is not listed as an explosive material in ATF guidelines, and is listed as a flammable by some regulations. Even if this position had merit, the existence of controverting evidence does not demonstrate that the trial court abused its discretion. *Nelkin v. Young*, 397 S.W.2d at 958. Moreover, Lockhill's representations of the guidelines and regulations is not complete.

The ATF guidelines upon which Lockhill's expert relied to exclude gasoline from the definition of explosive materials specifically state that the list is not all inclusive of explosive materials. RR.V:71. The fact that a substance is not listed does not mean that it is not an explosive.

Likewise, the characterization of gasoline as a flammable substance does not mean that it is not explosive. 29 CFR 1910.106 specifically provides that the flammable range is also known as the explosive range. *See also* RR.VII:Exhibit 18, p. 3. Lockhill's own expert could not dispute that official OSHA regulations indicate that the terms flammable range and explosive range are interchangeable. RR.V:65-68.

The trial court does not abuse its discretion if the applicant pleads a cause of action and presents some evidence tending to sustain that cause of action. *RP&R, Inc. v. Territo*, 32 S.W.3d 396, 402 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Significantly, a reviewing court is not to assume the evidence taken at a preliminary

hearing will be the same as the evidence developed at a full trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). If there is some evidence of substantive and probative character, a reviewing court may not find that the trial court abused its discretion. *Houston v. Southwestern Bell Tel. Co.*, 263 S.W.2d 169 (Tex. Civ. App.—Galveston 1953, writ ref'd).

In this case, the trial court was presented with four days of testimony, including the testimony of two experts. Ard Mor presented significant evidence of all elements of Ard Mor's probable right of recovery. To the extent that Lockhill claims to have discredited such evidence, a conflict in the evidence does not demonstrate an abuse of discretion. *Matuszak v. Houston Oilers, Inc.*, 515 S.W.2d 725, 728 (Tex. App.—Houston [14th Dist.] 1974) ("It is also settled that fact findings on conflicting evidence will not be disturbed."); *see Sheehan v. Levy*, 215 S.W. 229 (Tex. Civ. App.—Dallas 1919, writ granted), *aff'd*, 238 S.W. 900 (Tex. Comm'n App. 1922, opinion adopted). The trial court did not abuse its discretion in rendering its findings or conclusions.

III. **The Covenants of the Shavano Commercial Property Partnership, Unit I Expressed a Clear Intent and Purpose to Benefit the Adjacent Landowners Through its Restrictions.**

Although Lockhill acknowledges that restrictive covenants may be enforced by someone other than the grantor or grantee, Lockhill raises another sufficiency of

the evidence challenge with respect to Ard Mor's right to do so. Specifically, Lockhill claims that Ard Mor failed to present evidence that it is entitled to benefit from the restrictive covenants. Appellant's Brief at 10.

The test for standing is whether there is "(1) a real controversy between the parties (2) that will be actually determined by the judicial declaration sought." *Antonov v. Walters*, 168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied). Ordinarily, any person entitled to benefit under a restrictive covenant is entitled to enforce it. *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 384 (Tex. App.—Texarkana 2003, pet. denied). Where many property owners are interested in a restrictive covenant, any one of them can enforce it. *Giles v. Cardenas*, 697 S.W.2d 422, 427 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.).

Although a restrictive covenant is a contractual agreement between the seller and the purchaser of real property, circumstances exist in which a restrictive covenant may be enforced by someone other than the grantor or grantee. For example, a property owner may subdivide property into lots and create a subdivision in which all property owners agree to the same or similar restrictive covenants designed to further the owner's general plan or scheme of development. Under these circumstances, each purchaser within the subdivision is assumed to benefit from the restrictions and each has the right to enforce the restrictions. *See, e.g., Curlee v.*

25

*Walker*, 244 S.W. 497, 498 (Tex. 1922) ("It is perfectly clear that it is lawful for districts with restrictions [designed to benefit all property owners] to be created, and also that each purchaser has the right to rely on and to enforce those restrictions."). If the deed of the property owner against whom enforcement of the restriction is sought contains the restriction, standing is based on an implied mutuality of covenants among the various purchasers within the subdivision. *See, e.g., id.*; *Giles*, 697 S.W.2d at 427 (holding that where many property owners are interested in a restrictive covenant, any one of them can sue to enforce it); *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. Civ. App.—El Paso 1914, no writ) (standing is predicated on mutuality of covenant between original owner and each purchaser).

In other words, where an owner of a tract subdivides and sells the subdivided parcels to separate grantees, with restrictions on the use of each parcel pursuant to a general plan or scheme of development, each grantee may enforce the restrictions against each other. *Lehmann v. Wallace*, 510 S.W.2d 675, 680–81 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.). "Such a plan may be established in various ways, such as by express covenant, by implication from a filed map, or by parol representations made in sales brochures, maps, advertising, and oral statements on which the purchaser relied in making his purchase." *Id*. at 680.

**A.     Evidence in the record tends to prove standing.**

The appellate record demonstrates that Ard Mor does have standing to enforce the restrictive covenants. Lockhill does not suggest that Ard Mor is not an adjacent property owner or that Ard Mor lacks standing. Instead, Lockhill argues that for purposes of the injunction hearing, (1) there was no document introduced into evidence proving that Ard Mor owns property in the vicinity of the Lockhill property; (2) there was no document introduced into evidence of common source of the property; and (3) there was no document introduced into evidence that any of the Appellees were parties to the restrictive covenants. Appellant's Brief at 10.

In addition to the evidence recited in the statement of facts and arguments above, the record reflects that Ard Mor is the owner of the Luv-N-Care Child Development Center located at 13211 Huebner Rd., San Antonio, Texas, and legally described as CB 5938 Lot 1814 Shavano Park, Subd Ut-16-A-1, Bexar County, Texas. CR.I:2, 10, 44, 248, 262, 264, 265, 321, 322-324, 337; CR.II:45, 115-121; RR.II:25, 28, 43, 50, 101; RR.IV:15, 55. Ard Mor purchased the property from Shavano Creek Commercial Properties. CR.I:2, 10; CRII:115-121. The record also reflects that Lockhill Ventures, LLC purchased two properties adjacent to the Luv-N-Care Child Development Center, which are also located in Shavano Park, Subdivision

16-A-1. CR.I:77, 96-98. Therefore, the appellate record demonstrates that Ard Mor and Lockhill are not only adjacent landowners, but own land in the same subdivision.

Both properties are encumbered by nearly identical covenants of Shavano Creek Commercial Partnership Unit 1, Ltd. CR.I:102, 291-318; CR.II:88; RR.VII:PX0-1. Both covenants' stated purpose is to ensure compatibility with the residential neighborhood in which the properties are located. CR.I:105; CR.II:67, 88; RR.VII:PX0-1. Both covenants prohibit certain activities, such as the sale of certain motor vehicles, activity deemed by be offensive by means emitting odors and fumes, and the storage or use of explosive material. CR.I:105; CR.II:93; RR.VII:PX0-1. The appellate record clearly demonstrates Ard Mor's standing to enforce the restrictive covenants.

**B.    Ard Mor's objections to the evidence of standing are matters reserved for the full trial on the merits.**

Lockhill does not dispute that Ard Mor is an adjacent landowner in the same subdivision, or that both parties are bound by nearly identical covenants of Shavano Creek Commercial Properties. Lockhill's complaint seems to be that the public records already contained in the court's file, argued by the parties, and reviewed by the court, were not formally admitted into evidence during the injunction hearing. The problem with Lockhill's argument is that Lockhill repeatedly objected to the

admission of evidence of standing on relevancy grounds during the injunctive hearing.

At the outset, Appellant's argument is facially improper because matters regarding issues of common source and beneficiary status under the covenants are matters reserved for trial on the merits. *Scott v. Rheudasil*, 614 S.W.2d 626 (Tex. Civ. App.—Fort Worth 1981, no writ). In *Scott v. Rheudasil*, on an appeal from a temporary injunction, the appellant made similar objections regarding whether or not the plaintiffs had standing given that the development entity was defunct. There the court found that "[t]he posture of this case being in the nature of temporary injunction the equities appear to be on the side of holding, pending a trial on the merits, that the Plaintiffs have standing to enforce the protective covenant." *Id.* at 639. The court admonished however, that "[u]pon a trial on the merits the burden will be on the Plaintiffs to show that the covenant was intended to inure to their benefit . . . ." *Id.*

When counsel for Ard Mor attempted to introduce evidence and discuss the three parcels of land subject to the covenants, counsel for Lockhill asserted, "[t]hey might want to be able to do that in a damage lawsuit, but they don't get that in a temporary injunction . . . ." RR.II:36. Lockhill's argument regarding standing is premature. *Fairfield v. Stonehenge Ass'n Co.*, 678 S.W.2d 608, 612 (Tex.

29

App.—Houston [14th Dist.] 1984, no writ) (the merits of the underlying case are not presented for appellate review on appeal from a grant of a temporary injunction).

## C. Lockhill waived or invited any error regarding the lack of admission of sufficient evidence of standing by objecting to evidence of standing on relevancy grounds.

Without waiving the forgoing, and in the alternative, this Court should hold that Lockhill waived or invited any error with respect to the sufficiency or admission of Ard Mor's evidence regarding standing at the temporary injunction phase of the proceedings. The doctrine of invited error provides that a party may not complain of an error which he has invited. *In re Department of Family and Protective Services*, 273 S.W.3d 637, 646 (Tex. 2009); *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005); *Ramirez v. State*, 973 S.W.2d 388, 392 (Tex. App.—El Paso 1998, no pet.). Nor may a party ask something of the trial court and then complain that the court erred in granting the relief sought. *Northeast Tex. Motor Lines v. Hodges*, 158 S.W.2d 487, 488 (Tex. 1942); *Bluestar Energy, Inc. v. Murphy*, 205 S.W.3d 96, 101 (Tex. App.—Eastland 2006, pet. denied).

Lockhill did not mention standing or raise any objections to the proceedings during opening statement or presentation of evidence. RR.II:14-17. At all times during the four-day hearing, Lockhill's counsel framed the relevant issue before the

court as whether or not gasoline is explosive. In fact, Lockhill's counsel objected to testimony from Ard Mor employees regarding the location and use of Ard Mor's property and "about what is happening on these three adjoining tracts of land that are subject to the declarations of covenant" — asserting that such testimony was undisputed and irrelevant, and that the only issue before the trial court was whether there was a breach of covenant or zoning. RR.II:28-29, 32-34. For example, during the presentation of one of Ard Mor's witnesses regarding Ard Mor's use of the property, counsel for Appellant objected and framed the issue before the court as follows:

> "The question is: On the parcel of land in which the Nooners are trying to construct a convenience store, retail space, and gas retail pumps, whether or not that is permissible under the covenants and whether or not it's permissible under zoning? It has nothing to do with the neighbors."

RR.II:35. After Lockhill vigorously argued to narrow the issues before the court, counsel for Ard Mor specifically asserted that, "Your Honor, the Luv-N-Care clearly has a right to enforcement of the declaration of covenant." RR.II:35. Although this statement was a clear assertion of standing, Lockhill continued its attempt to narrow the issues before the court by asserting that, "the focus of proof necessary to–for this Court to extend or dissolve the TRO, which has six pronounced elements." RR.II:35. Undeterred, Ard Mor attempted to discuss the three parcels of land subject to the

covenants, but Lockhill again asserted, "[t]hey might want to be able to do that in a damage lawsuit, but they don't get that in a temporary injunction . . . ." RR.II:36. A thorough review of the exchange almost makes it appear as if Lockhill was trying desperately to steer the court away from the issue of standing and keep evidence related to standing out of the record. The few minor references that Lockhill made to standing were vague and were couched in terms of questions of law.

When Lockhill finally mentioned standing, during closing argument, it was a brief assertion that Ard Mor was not a party to the same declaration of covenants as Lockhill. RR.V:112. But, even at closing arguments, Lockhill attempted to steer the court away from a full discussion of the standing issue, objecting to the submission of a trial brief that Ard Mor offered in anticipation that Lockhill might finally expound upon the standing issue recited in its pleading . RR.V:138-139.

If Lockhill wanted to test the sufficiency of Ard Mor's evidence establishing standing at the injunctive stage of the proceedings, it should not have objected to the admission of the evidence as being irrelevant for purposes of the injunction hearing. Tex. R. App. P. 33.1(a); *see Venus v. State*, 282 S.W.3d 70, 73-74 (Tex. Crim. App. 2009) (doctrine of invited error precluded appellant from challenging sufficiency of evidence when appellant's own objections kept the evidence from being developed at the trial court); *Berry v. Segall*, 315 S.W.3d 141, 144 (Tex. App.—El Paso 2010,

32

no pet.) (holding that doctrine of invited error precluded appellant's complaint that trial court should have submitted issue of offset for insurance payments to the jury when appellant characterized the issue of offset as one of law to be determined by the court, and posited that the jury should not hear any evidence of insurance or offset issues); *see also, e.g., Breof BNK Texas, L.P. v. D. H. Advisors, Inc.*, 370 S.W.3d 58, 68 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that "general language does nothing to make the trial court aware" of the appellant's beliefs and arguments). Indeed, if evidence of standing was an issue, Lockhill should have mentioned standing before the parties spent four days putting on argument and evidence regarding the nature of gasoline. *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014) ("Preservation of error reflects important prudential considerations recognizing that the judicial process benefits greatly when the trial courts have the opportunity to first consider and rule on error.").

In the present matter, Lockhill did not simply fail to bring the issue of standing evidence to the trial court's attention, Lockhill continually objected to the relevance and the importance of evidence establishing standing. As such, Lockhill failed to preserve for appellate review the issue of the sufficiency of the evidence to support standing. *See Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) ("The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that

one should not be permitted to waive, consent to, or neglect to complain about an error and then surprise his opponent on appeal by stating his complaint for the first time."). Lockhill's current objections to standing — as to the injunctive proceedings — should be deemed waived or estopped as invited error.

**D.** **The court was entitled to take judicial notice of public records attached to pleadings.**

In the alternative, and without waving the foregoing, even if the issue of standing evidence was before the trial court, it is clear that the trial court determined, based on its own file and on public records, that Ard Mor would be able to establish standing at trial. During the initial stages of the hearing, when the court surveyed counsel regarding the admission of documents attached to pleadings, counsel for Ard Mor stated that he had no objection to the admission of such things as the declarations, deeds, and ordinances. CR.II:21-22. This statement was not contradicted. In fact, during the proceedings, documents were handed to the court upon the court's request. CR.II:21. However, a review of the record makes it appear as if Lockhill was intentionally negating the issue it now raises to ensure that Ard Mor would not formally introduce the documents being discussed by all partes.

When Lockhill, for the first time during closing argument, asserted that the documents attached to Ard Mor's pleadings were not formally introduced into

evidence, counsel for Ard Mor asserted that the documents were public record and that the trial court could take judicial notice of them. RR.V:139; *see Johnson v. Johnson*, No. 03-02-00427-CVC, 2005 WL 3440773, *6 (Tex. App.—Austin Dec. 16, 2005, no pet.) (property deeds meet the requirements of Rule 201). Indeed, Rule 201 specifically allows a court to take notice of facts that can be accurately and readily determined from "sources whose accuracy cannot reasonably be questioned." Tex. R. Evid. 201(b)(2). Moreover, a court may take judicial notice on its own, at any stage of the proceeding, and a court *must* take judicial notice if it is requested and the court is provided with the necessary information. Tex. R. Evid. 201(c); *see Estate of York*, 934 S.W.2d 848, 851 (Tex. App.—Corpus Christi 1996, writ denied) ("A court may take judicial notice of its own records in a case involving the same subject matter between the same, or practically the same, parties."); *Escamilla v. Estate of Escamilla*, 921 S.W.2d 723, 726 (Tex. App.—Corpus Christi 1996, writ denied); *see also Texas Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 694 (Tex. 1989).

The covenants of Ard Mor are not just public records, but were attached to the pleadings and were provided to the trial court. Pursuant to Texas Rule of Evidence 201(c), the trial court was required to take notice of the documents. Consequently, even if preserved, Lockhill's sufficiency arguments regarding standing lack merit because the trial court was required to judicially notice the documents attached to the

35

pleadings. Given the trial court's ruling, it appears that the trial court followed this rule of law.[3] *See also Estate of York*, 934 S.W.2d at 851 ("The trial court can take judicial notice in the absence of a request from a party, and may be presumed to have taken notice of its own files.") (internal citation omitted); *Lacy v. First Nat'l Bank*, 809 S.W.2d 362, 367 (Tex. App.—Beaumont 1991, no writ).

Furthermore, appellate courts can and do "take judicial notice of matters of public record, whether requested by a party or on its own motion, for the first time on appeal." *City of El Paso v. Fox*, No. 08-12-00264-CV, 2014 WL 5023089, *4 (Tex. App.—El Paso Oct. 8, 2014, no pet.) (citing *Langdale v. Villamil*, 813 S.W.2d 187, 190 (Tex. App.—Houston [14th Dist.] 1991, no writ)); *see, e.g., In re Estate of*

---

[3] Lockhill argued during the hearing that documents attached to the pleadings, but not introduced into evidence, could not be considered by the trial court. The cases so holding stand for the proposition that a temporary injunction cannot stand on pleadings and affidavits alone, but must be supported by the introduction of evidence at a hearing. *See Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683 (Tex. 1968); *Texas State Bd. of Educ. v. Guffy*, 718 S.W.2d 48 (Tex. App.—Dallas 1986, no writ). Those cases, however, acknowledge the right of the opposing party to test evidence such as an affidavit. In this case, the evidence attached to the pleading were public records and as such were self-authenticating. Moreover, and significantly, Lockhill never objected to the documents or suggested that the documents were untrue or misleading. *See Tigua Gen. Hosp., Inc. v. Feuerberg*, 645 S.W.2d 575, 576 (Tex. App.—El Paso 1982, no writ) (treating affidavits as sufficient temporary injunction proof, despite lack of parties' agreement to do so below, when opposing party did not complain of deficiency of affidavits on appeal). Lockhill's argument is inapplicable in light of the facts that the court conducted a four-day hearing with extensive testimony and evidence and that Lockhill never challenged the fact that Ard Mor was an adjacent landowner in the same subdivision burdened by covenants of the same developer.

*Hemsley*, No. 08-12-00368-CV, 2014 WL 5854220, \*7-8 (Tex. App.—El Paso Nov. 12, 2014, no pet.); *Johnson v. Johnson*, 03-02-00427-CVC, 2005 WL 3440773, \*5-6 (Tex. App.—Austin Dec. 16, 2005, no pet.); *Langdale*, 813 S.W.2d at 190. In the event that this Court determines that the issue of standing is before it, this Court can also take judicial notice of the covenants and public records attached to Ard Mor's pleadings to confirm Ard Mor's standing to enforce the covenants against Lockhill. If necessary, Ard Mor requests that this Court do so. (Tab A).

**E.  The harm to Lockhill, which is the preservation of the status quo pending trial, has been prolonged by Lockhill.**

Even if the trial court erred as Lockhill alleges — by relying on the public records attached to Ard Mor's pleadings and the testimony provided at the evidentiary hearing — Lockhill's own actions have dwarfed any harm caused by the trial court's error. The only issue before the trial court was the propriety of a temporary injunction, i.e. whether the trial court should preserve the status quo pending a full trial. Prior to Lockhill's appeal, this matter was set for trial on February 17, 2015. CR.II:138. As a result of Lockhill's appeal and requests for extension, that date has long since passed.

Even if the trial court erred in granting a temporary injunction, the only harm caused by the error was a delay in Lockhill's construction and development until

February 17, 2015. But for Lockhill's own actions of working in concert with the City to appeal the trial court's ruling, the injunctive relief would have already concluded. Not only did Lockhill file an appeal, it also requested two lengthy extensions of time to file its brief. Therefore, any harm caused by the decision of the trial court to preserve status quo was negated by Lockhill's decision to file an appeal based on an alleged hyper-technicality that in no way demonstrates that Ard Mor will not prevail upon full trial. As such, any error committed by the trial court was harmless and is not reversible. *See* Tex. R. App. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeal concludes that the error complained of . . . probably caused the rendition of an improper judgment.").

Restated, Lockhill's appeal is not based on an assertion that Ard Mor will not prevail in proving its case on trial, nor that Ard Mor will not be able to establish its standing to enforce the restrictive covenants during a full trial. Lockhill's appeal is based on the allegation that the trial court should not have granted injunctive relief because some of the documents contained in the court's file, which conclusively establish standing, were not formally introduced into evidence. Yet, if the trial court did not grant injunctive relief and Lockhill continued to develop its property despite the pending litigation, Lockhill would likely face the additional cost and burden of

38

removing any improvidently placed improvements. *See Jim Rutherford Invs., Inc. v. Terramar Beach Comty. Ass'n*, 25 S.W.3d 845, 850 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that equities did not favor builder who refused to halt construction after being informed of deed restrictions); *Gigowski v. Russell*, 718 S.W.2d 16, 22 (Tex. App.—Tyler 1986, writ ref'd n.r.e.) (ordering appellants to remove mobile home despite "considerable expense" when they had actual and constructive notice of deed restrictions); *Winfield v. Lamoyne*, No. 05-94-01851-CV, 1995 WL 634161, *15 (Tex. App.—Dallas Oct.16, 1995, writ dism'd) (mem.op.) (ordering removal of exterior stairway and other improvements when builder had actual and constructive knowledge of deed restrictions prior to construction). Under the facts of this case, the harm Lockhill alleges the trial court caused is actually self-inflicted.

Finally, if this Court finds that Lockhill's challenge to the sufficiency of evidence supporting standing has merit, the appropriate remedy is to remand the cause for factual development (in this case, remand for the mechanical exercise of officially admitting into evidence documents already in the record). An appellate court should only render judgment that a plaintiff lacks standing when the defendant affirmatively negates the possibility that the plaintiff has standing. *See Scarbrough v. Metro. Transit Auth. of Harris County*, 326 S.W.3d 324, 339 (Tex. App.—Houston

[1st Dist.] 2010, pet. denied). When, as here, the defendant's challenge to the plaintiff's standing depends on disputed evidentiary matters, the appropriate remedy is to remand. *See Hendee v. Dewhurst*, 228 S.W.3d 354, 376 (Tex. App.—Austin 2007, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). This is especially true in the present case, since Lockhill attempted to keep evidence supporting standing out of the record.

## IV. The Phrase, "Storage, handling or use of explosive material" Is Not Ambiguous.

Despite abundant evidence that gasoline — or gasoline vapors — are explosives, Lockhill revisits its argument that gasoline is not an explosive material by repackaging it as an issue of interpreting a restrictive covenant, likely in an attempt to obtain a more favorable standard of review. Under this argument, Lockhill asserts that the covenant should be interpreted in its favor. However, Lockhill's argument does not seek to interpret the meaning of the restrictive covenant. Indeed, Lockhill does not even cite to the specific language of the covenant which requires interpretation. Instead, Lockhill's argument seeks to re-interpret whether or not gasoline is explosive. Notably, Lockhill does not suggest that the term "explosive" is ambiguous.

As in other written instruments, the end sought in the construction of restrictive covenants is the ascertainment of the intent of the parties as revealed by the language used in the covenant. *Couch v. Southern Methodist University*, 10 S.W.2d 973 (Tex. Comm'n. App. 1928, opinion adopted). Words and phrases used in a restrictive covenant will be accorded their ordinary and commonly accepted meaning. *Settegast v. Foley Bros. Dry Goods Co.*, 270 S.W. 1014 (Tex. 1925). The rule that restrictive covenants must be strictly construed, favoring the grantee against the grantor and resolving all doubts in favor of the free and unfettered use of the premises, applies only when the intent of the parties is not ascertainable from the terms of the covenant. *Atkins v. Fine*, 508 S.W.2d 131 (Tex. Civ. App.—Austin 1974, no writ); *Knopf v. Standard Fixtures Co.*, 581 S.W.2d 504, 505 (Tex. Civ. App.—Dallas 1979, no writ). The intent of the covenant — to ban the storage and use of explosives — is clear, and is also reasonable, given that Lockhill's property is located within a residential area.

## V.     The Temporary Injunction Is Not a Prior Restraint.

As an alternative argument, Lockhill asserts that the temporary injunction should be modified to remove the portion that prohibits Lockhill from:

> "Commencing or continuing with any applications for approval by the City of Shavano Park or any other governmental authority to use the above described real property for storage or sale of gasoline or other explosive material."

41

Appellant's Brief at 15 (citing CR.II:138). Lockhill claims that this portion of the temporary injunction infringes upon Lockhill's rights under the First Amendment of the United States Constitution and Article 1, Section 8 and 27 of the Texas Constitution because the temporary injunction is a prior restraint on speech. In support of this argument Lockhill cites to *Kinney v. Barnes*, but does not acknowledge that *Kinney* dealt with the issue of defamatory statements. *See Kinney v. Barnes*, 443 S.W.3d 87, 89 (Tex. 2014).

Lockhill also fails to acknowledge the Texas case law dealing with the issue before this Court — whether a temporary injunction is a prior restraint when it prohibits only that speech which the speaker has already agreed to abstain from. That issue has been previously and consistently resolved in Ard Mor's favor. *See Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 775-76 (Tex. App.—Houston [1st Dist.] 1992, no writ) (temporary injunction that prohibited appellant from petitioning the F.C.C. was not a prior restraint because appellant had agreed not to oppose appellee's application with F.C.C.).

In fact, this Court has already encountered and rejected the same prior restraint argument forwarded by Lockhill. In *Menna v. Romero*, the appellant argued that the temporary injunction was an unconstitutional prior restraint. 48 S.W.3d 247, 251 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). However, because the appellant

had already covenanted to refrain from the speech that the temporary injunction prohibited, this Court rejected the constitutional claim and upheld the temporary injunction. *See id.* at 249, 253.

The portion of the temporary injunction cited above is neither an impermissible prior restraint nor overly broad. The temporary injunction only prohibits Lockhill from petitioning the government for permission "to use the above described real property for storage or sale of gasoline or other explosive material." CR.II:138. Lockhill already covenanted to abstain from using the property in this manner. CR.I:105. Therefore, the temporary injunction is merely enforcing the covenant Lockhill already made and is not restraining Lockhill from doing anything that Lockhill is legally entitled to do.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees pray that this Court affirm the trial court's order for temporary injunction. In the alternative, Appellees pray that this Court remand this matter to the trial court for determination of standing. Appellees request any further relief, in law and equity, to which Appellees may justly be entitled.

Respectfully submitted,

COKINOS, BOSIEN & YOUNG

By: /s/ Karen L. Landinger
      KAREN L. LANDINGER
      State Bar No. 00787873
      klandinger@cbylaw.com
      JAY K. FARWELL
      State Bar No. 00784038
      jfarwell@cbylaw.com
      10999 West IH-10, Suite 800
      San Antonio, Texas  78230
      (210) 293-8700 (Office)
      (210) 293-8733 (Fax)

      ATTORNEYS FOR APPELLEES, ARD MOR, INC., TEXAS ARDMOR PROPERTIES, LP AND TEXAS ARDMOR MANAGEMENT, LLC

*Co-Counsel*
David L. Earl
State Bar No. 06343030
dearl@earl-law.com
EARL & ASSOCIATES, P.C.
Pyramid Building
601 NW Loop 410, Suite 390
San Antonio, Texas  78216
(210) 222-1500 (Office)
(210) 222-9100 (Fax)

## CERTIFICATE OF SERVICE

I certify that on the 6th day of March, 2015, a true and correct copy of the foregoing BRIEF OF APPELLEES was served on the following counsel of record by electronic service through *MyFileRunner.com*; and the BRIEF OF APPELLEES was duly filed with the Clerk of the Fourth Court of Appeals through *MyFileRunner.com*, together with this proof of service:

Lance H. "Luke" Beshara
Randall A. Pulman
Brandon L. Grubbs
PULMAN, CAPPUCCIO, PULLEN,
  BENSON & JONES, LLP
2161 N.W. Military Highway, Suite 400
San Antonio, Texas 78213
(210) 222-9494 (Office)
(210) 892-1610 (Fax)
lbeshara@pulmanlaw.com
rpulman@pulmanlaw.com
bgrubbs@pulmanlaw.com

Patrick C. Bernal
Elizabeth M. Provencio
DENTON NAVARRO ROCHA BERNAL HYDE & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
(210) 227-3243 (Office)
(210) 225-4481 (Fax)
patrick.bernal@rampage-sa.com
elizabeth.provencio@rampage-sa.com

*/s/ Karen L. Landinger*

KAREN L. LANDINGER
JAY K. FARWELL

# CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), the undersigned certifies this Brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B).

1.      Exclusive of the exempted portions in Tex. R. App. P. 9.4(i)(2)(B), the Brief contains 9,994 words.

2.      The Brief has been prepared in proportionally spaced typeface using WordPerfect Version X5.

3.      If the Court so requests, the undersigned will provide an electronic version of the Brief and/or a copy of the word or line printout.

4.      The undersigned understands a material misrepresentation in completing this Certificate, or circumvention of the typevolume limits in Tex. R. App. P. 9.4, may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

*/s/ Karen L. Landinger*

KAREN L. LANDINGER
JAY K. FARWELL

# Tab A



**FILED BY
ALAMO TITLE**    DECLARATION OF PROTECTIVE COVENANTS

This Declaration of Protective Covenants ("Declaration") is made to be effective as of October 22, 2001, by **Shavano Creek Commercial Partnership Unit 1, Ltd., a Texas limited partnership ("Declarant").**

## WITNESSETH

WHEREAS, Declarant is the owner of the real property in the City of Shavano Park, Bexar County, Texas, described in <u>Exhibit A</u> attached hereto and incorporated herein (the "Property");

WHEREAS, Declarant intends to market and develop the Property and certain surrounding properties owned by Declarant described in <u>Exhibit B</u> attached hereto and incorporated herein (collectively, the "Shavano Creek Commercial Properties") for commercial purposes and Declarant desires to provide for the systematic, orderly development and use of the Property for the benefit of the Property and the Shavano Creek Commercial Properties, and to enhance the compatibility of the use and development of the Property and the improvements constructed thereon with the adjoining residential neighborhood; and

NOW THEREFORE, Declarant declares that the Property shall hereinafter be held, transferred, sold, conveyed, occupied and used subject to the covenants, requirements, conditions, restrictions, easements and charges hereinafter set forth, it being expressly acknowledged and agreed that the covenants, restrictions, easements and conditions herein set forth shall run with the land and be binding on all parties having all right, title or interest in the Property, and their respective heirs, successors and assigns.

## 1. DEFINITIONS.

(a) "Architectural Design Guidelines" and "ADG" shall mean the architectural standards, guidelines, objectives and procedures for the design, placement and construction of improvements within the Property. Declarant shall have the right to revise, amend and update the ADG. A copy of the current ADG is available from Declarant upon request.

(b) "City" shall mean the City of Shavano Park, Texas and/or the City of San Antonio, Texas, and their applicable agencies, departments, and commissions.

(c) "DBH" and "Diameter at Breast Height" shall mean the diameter of a tree measured approximately forty-two (42") inches from the ground or top of the root ball.

(d) "Declarant" shall mean Shavano Creek Commercial Partnership Unit 1, Ltd., a Texas limited partnership, and its successors or assigns who are designated by

1

CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     7.16.14
       Deputy           Date

Declarant as such in writing, and who consent in writing to assume the duties and obligations of the Declarant with respect to the Property.

(e) "Declaration" shall mean this instrument and any amendment or supplement hereto duly approved in accordance with the terms hereof and recorded in the Official Public Records of Real Property of Bexar County, Texas.

(f) "Governmental Authority" shall mean all federal, state and local authorities, agencies, commissions and regulatory bodies having jurisdiction over the Property, or any portion thereof, or over the Declarant or any Owner.

(g) "Governmental Regulations" shall mean all statutes, rules, codes, ordinances, regulations, permits, licenses and other requirements of any Governmental Authority.

(h) "Improvements" shall mean every structure on the Property and all appurtenances thereto, including, but not limited to, buildings, outbuildings, roads, driveways, sidewalks, walkways, paved areas, parking areas, fences, screening walls, retaining walls, loading areas and facilities, signs, utilities, lawns, hedges, mass plantings, landscaping, water lines, sanitary and storm sewers, electrical and gas distributions facilities, street lights, and all exterior HVAC or other exterior fixtures or equipment, pumps, tanks, lines, antennas, satellite dishes, towers, metering equipment and other utility or infrastructure facilities.

(i) "Owner" shall mean and refer to each owner of record, whether one or more persons or entities, of fee simple title to all or any part of the Property, including contract sellers, but excluding those having such interest merely as security for the performance of an obligation.

(k) "Property" shall mean and refer to the real property described in Exhibit A attached hereto and incorporated herein, and/or any portion thereof.

(l) "Required Plans" shall mean complete architectural and engineering plans, including site plans, grading plans, exterior elevations, typical floor plans, light spillage plans, landscape and irrigation plans, and any other plans or information deemed necessary in the reasonable judgment of the Declarant in accordance with Section 3 herein.

(m) "Shavano Creek Commercial Properties" shall mean and refer to the real property described in Exhibit B attached hereto and incorporated herein, and/or any portion thereof.

2. **PROPERTY SUBJECT TO THIS DECLARATION.** The real property which is and shall be held, transferred, sold, conveyed, developed and occupied subject to this Declaration is the Property described in Exhibit A attached hereto and incorporated herein.

2



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
           Deputy                                    Date

## 3. ARCHITECTURAL CONTROL.

**(a) Plan Review.** No improvement shall be erected, constructed, placed, altered (either by addition or deletion), maintained or permitted to remain on any portion of the Property until the Required Plans, in such form and detail as the Declarant may deem reasonably necessary, shall have been submitted to and approved in writing by the Declarant. The Required Plans shall include the location of and accommodate all easements affecting the Property, including the reserved easements described in Section 7 herein. The Declarant may employ professional consultants to assist it in such review, and impose reasonable fees for processing of applications. The decision of the Declarant shall be final, conclusive, and binding upon the applicant and the Declarant, entitling the applicant to rely on such decision. Declarant has promulgated the Architectural Design Guidelines to more fully describe the design and aesthetic requirements for the Property and other matters in connection with the plan submission and review required herein.

**(b) Limitation of Liability.** Declarant and its representatives shall not be liable to any person subject to or possessing or claiming the benefits of this Declaration for any damage or injury to property or for damage or loss arising out of their acts hereunder. Declarant's evaluation of the Required Plans is solely to determine compliance with the terms of this Declaration. Declarant expressly disclaims any responsibility to determine compliance of the plans with any applicable Governmental Regulations, building code or other standard for construction. Declarant shall not be responsible for reviewing any plans or specifications from the standpoint of structural safety, engineering soundness, or conformance with building or other codes, or other Governmental Regulations, nor shall Declarant's approval be deemed a verification of the structural safety, engineering soundness, or conformance of the Improvements to building or other codes, or other Governmental Regulations. Neither the Declarant, nor any of the partners, employees or agents thereof, shall be liable in damages or otherwise to anyone submitting plans and specifications for approval or to any Owner affected by this Declaration by reason of mistake of judgment, negligence, or nonfeasance arising out of or in connection with the approval or disapproval or failure to approve or to disapprove any plans and specifications or requests for variance.

**(c) Procedures.** The Required Plans submittals are more fully described in the ADG and may be revised by Declarant from time to time effective upon written notice to the Owners. Declarant shall notify Owner in writing whether any Required Plans are approved or disapproved (specifying reasons for disapproval) within thirty (30) days after Declarant has received the Required Plans and written notice that the Owner desires to obtain Declarant approval thereof. If plans submitted by any Owner are not sufficiently complete or are otherwise inadequate, Declarant may reject them as being inadequate or may approve or disapprove them in part, conditionally or unconditionally, and reject the balance, or may notify the Owner that additional documents or information are required. If the submitted plans are deemed to be inadequate or

3

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     7·16·14
    Deputy          Date



incomplete and written notice of such determination is given to Owner within thirty (30) days of submission of such plans, the thirty (30) day review period shall not commence until Declarant has received a complete set of the Required Plans. If Declarant fails to reject or approve submitted plans within the review period, such plans shall be deemed approved as submitted by the Owner.

(d)     **Variances.** Declarant may, but shall not be obligated to, grant variances and waivers relative to deviations from this Declaration and/or the ADG, or to correct or avoid hardships to any Owner. Upon submission of a written request for variance, Declarant may, from time to time, in its reasonable discretion, permit an Owner to construct, erect or install an Improvement which is in variance from the covenants, restrictions or architectural standards which are provided in this Declaration or the ADG. In any case, however, the Improvement with such variances must, in Declarant's reasonable discretion, blend effectively with the general architectural style and design of existing Improvements on the Property and must not detrimentally affect the integrity of the Property and the Shavano Creek Commercial Properties as a first class suburban commercial and retail center. All requests for variances shall be in writing, shall be specifically indicated to be a request for variance, and shall indicate with specificity the particular standard sought to be varied and the nature of the variance requested. All requests for variances shall be deemed to be disapproved if Declarant has not expressly approved such request in writing within fifteen (15) days of the submission of such request. Declarant shall not be liable to Owner or any other person for any claims, causes of action or damages arising out of the grant of any variance to an Owner. Each request for a variance submitted hereunder shall be reviewed independently, and the grant of a variance to any one Owner shall not constitute a waiver of Declarant's right to deny a variance to another Owner. The decisions of Declarant with respect to variances shall be final and mutually binding upon the applicant and Declarant. All variances, to be effective, must be in writing. Owners are advised that certain variances may require the separate approval of the Board of Adjustments of the City or other applicable Governmental Authority.

(e)     **Approval Letter.** Upon approval of the final Required Plan submittals, an Approval Letter will be issued by Declarant. The Approval Letter must be signed by the Owner and returned to Declarant before construction of the Improvements specified therein may begin. By execution and delivery to Declarant of the Approval Letter, the Owner covenants and agrees as follows:

(i)     Construction of the Improvements will be completed within twelve (12) consecutive months from start of construction.

(ii)     Construction will be in substantial accordance with the approved Required Plans.

4



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
          Deputy                                      Date

(iii)    Any exterior changes after final approval of the Required Plans by Declarant must be approved in writing by Declarant prior to construction of those changes.

(iv)    Declarant may, upon advance notice to Owner, make regular inspections of the Improvements and construction site at times reasonably acceptable to Owner and accompanied by a representative of Owner if required by Owner.

If any of these conditions are not met and such failure continues for thirty (30) days after written notice thereof to Owner detailing the nature of such failure, the Approval Letter shall terminate and be of no further force or effect, and Owner shall be subject to the plan review process and all other requirements set forth herein with respect to the construction of any Improvements on the Property.

(f)    **Failure of Declarant to Act.** If Declarant fails to provide Owner with written notice of its approval or disapproval of any plans within thirty (30) days after submission by Owner of the Required Plans (subject to Declarant's rejection thereof and/or request for additional documents or information pursuant to subsection (c) above), it shall be conclusively presumed that Declarant has approved such plans; provided, however, that a deemed approval of any plan submittal shall not permit a violation of any of the terms of this Declaration, nor extend to any deviation from or alteration to the plans actually submitted, nor to any matter requiring a written variance.

(g)    **Decisions Final.** All decisions of Declarant shall be final and binding, and there shall not be revisions of any action of Declarant except by appropriate legal proceedings. In the event of construction of Improvements or threatened construction of Improvements in violation of this Declaration, any Owner or Declarant may seek to enjoin such construction or seek other relief against the Owner and/or builder responsible therefor, provided that Owner shall first be given written notice of the perceived violation and a reasonable period of time to remedy the violation prior to the filing of suit as provided herein.

(h)    **Compliance Inspection and Enforcement.** Declarant, may, but is not required, to police or enforce compliance with such considerations as setbacks or other specific, objective construction requirements. Declarant's agent may inspect those items reviewed by Declarant, including inspection for conformance to the site plan (grading and drainage), building plan, landscaping plan, and exterior design, colors and materials. In the event Declarant reasonably determines that significant field discrepancies exist, Declarant may notify Owner of the nature and extent of the discrepancy. Written clarification must be supplied by Owner to Declarant within ten (10) business days of receipt of such notification. In the event clarification by the Owner is not forthcoming or is determined to be inadequate by Declarant in its reasonable discretion, Declarant may at it's sole discretion retain a private consultant for the purpose of obtaining an outside opinion. All reasonable professional fees and

5

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____    7-16-14
    Deputy         Date

expenses associated with the retention of a private consultant up to $750 may be assessed by Declarant against the Owner.

(i) **Cooke Plans.** Declarant has approved the building and grading plans submitted by Paul M. Cooke for the proposed children's day care center and related facilities described in Exhibit C attached hereto and incorporated herein ("Cooke Plans"), and has granted a variance and/or waiver with respect to any specifications herein or in the ADG, which conflict or are inconsistent with the Cooke Plans, subject to the submission and approval of the signage, lighting and landscape and other required plans for the project and the requirements and limitations set forth in Section 3(e)(i), (ii), (iii) and (iv) and in Section 7 herein. Any material change in the Cooke Plans, or any material modification or addition to the Improvements after initial construction in accordance with the Cooke Plans, shall be subject to the plan submission, review and approval process and all other terms and conditions set forth in this Section 3.

## 4. USES OF PROPERTY.

(a) **Permitted Uses.** The Property and Improvements shall be developed, constructed and used only for retail and/or commercial uses permitted by applicable Governmental Authority and Governmental Regulations to operate on the Property, including but not limited to a children's day care center, except those uses which are prohibited pursuant to subsection (b) below. Notwithstanding anything herein to the contrary, that portion of the Property fronting on Huebner Road and described in Exhibit D attached hereto and incorporated herein ("Restricted Area") shall be used only for the purposes of a driveway to service the Property and the Shavano Creek Commercial Properties and attendant lighting, landscaping and signage in accordance with the standards and requirements for such improvements set forth herein and in the ADG.

(b) **Prohibited Uses.** No portion of the Property shall be used for purposes prohibited by the zoning and other ordinances of the City of San Antonio or City of Shavano Park or for any of the following:

(i) Adult entertainment, including, but not limited to: adult bookstore, adult booths, adult dancing establishments, adult motel, adult theater, or other activity or use (which terms include anything capable of being discerned by the human senses) which is pornographic, obscene, lewd, or lascivious, as such terms are defined from time to time by the Supreme Court of the United States.

(ii) Trailer, mobile home, or recreational vehicle park.

(iii) Commercial storage facility, or commercial storage or sales of motor vehicles, new or used automobile parts, mobile homes, portable buildings or other temporary buildings.

6



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____
　　　Deputy　　　　　　　　Date

(iv)    Yards for junk, wrecking, parts reclamation, or salvage.

(v)    Sale of used appliances or equipment.

(vi)    Feeding pens for animals, animal slaughtering, confinement of animals, stockyards, or uses related to the preparation of animals for slaughter.

(vii)    Asphalt manufacturing or refining; petroleum or petrochemical refining or manufacturing; asphalt or concrete paving, mixing, or batching plant; corrosive acid manufacturer or bulk storage, including but not limited to hydrochloric, nitric, sulfuric, and similar acids; bone distillation or the reduction, rendering, incineration or storage of garbage, offal, animal parts or animal waste, fats, fish, or similar materials or products.

(viii)    Manufacture of cement, limes, gypsum or plaster of paris.

(ix)    Manufacture, refining, or open storage of raw materials or finished products related to the manufacture or refining of, glue, size, gelatin, aloe, grease, lard, or vegetable oil.

(x)    Biomedical waste, storage or transfer.

(xi)    Wholesale meat and produce distribution.

(xii)    Welding, bottling and distribution plants.

(xiii)    Machine or trade shop.

(xiv)    Heavy equipment rental or sales.

(xv)    Manufacture or stripping or refinishing of furniture.

(xvi)    Manufacture of garments.

(xvii)    Contractor storage and equipment yards.

(xviii)    Manufacture of confectionery.

(xix)    Repair, storage, or terminals for buses, cabs or trucks.

(xx)    Bulk paint mixing.

(xxi)    Manufacture of billboards.

(xxii)    Auction house or other business devoted primarily to holding auctions.

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____    
       Deputy              Date

(xxiii) Any use or activity reasonably deemed by Declarant to be offensive, unpleasant, unsightly, or illegal by reason of the light emissions, vibrations, odor, fumes, gas, dust, airborne dirt ash, smoke, noise, sound frequency or shrillness, or pollution or which Declarant reasonably determines to present excess hazards by reason of excessive danger of fire or explosion.

(xxiv) Exploration, mining, or quarrying or drilling for oil, gas, phosphate, or other minerals of any type or kind.

(xxv) Use, manufacture, transportation, storage, disposal, handling, generation, or treatment of "toxic waste," "hazardous waste," "hazardous substance," or "hazardous material" as those terms are defined in or pursuant to any Governmental Regulations.

(xxvi) Storage, handling or use of explosive material.

(xxvii) Commercial landfill, dump, junkyard or other similar operation.

(xxviii) Raising, maintenance, housing or treatment of livestock or other animals overnight; provided, however, that a veterinary clinic with no outdoor kennels, dog runs or other outside animal housing facilities is permitted, if the facility is given the approval of TNRCC and other applicable Governmental Authority.

(xxix) Outdoor storage or display of equipment, material or merchandise except where not visible from any public street; provided, however, that outside restaurant tables and bank teller equipment is permitted.

(xxx) Nightclubs, taverns, massage parlors, play parks, or dance halls, except as such use is wholly contained within a bona fide restaurant or as is otherwise considered an amenity by the Owner's or Property clientele, such as a health club, tennis club or racquetball club.

(xxxi) Outdoor theater.

(xxxii) Institutional establishments which by nature of operation or character are incompatible with the Owner's or Property environment, including but not limited to, mortuaries, funeral homes, and cemeteries.

(xxxiii) Temporary buildings, trailers and mobile homes in the open, except as a construction office for a project on the Property and only for the period of such construction.

8



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____
        Deputy                    Date

(c) **Edwards Aquifer.** Owners will be sensitive to the fact that the Property lies over the Edwards Aquifer Recharge Zone. Owners will abide by and comply with all City and State laws, rules, and regulations relating to construction over the Edwards Aquifer Recharge Zone.

5. **CONSTRUCTION AND DEVELOPMENT STANDARDS.**

(a) **Structural Requirements.**

(i) Exterior Walls: Each exterior wall shall be not less than ninety percent (90%) masonry, inclusive of brick, brick veneer, stucco, masonry, limestone, or such other exterior building materials as may hereafter be in use for construction of first class buildings, in each case of a design and color approved by Declarant. No corrugated metal may be used unless approved by Declarant for use as architectural elements. No concrete block or tilt wall construction may be used unless the wall is completely covered with stucco or a similar material or painted (textured paint) to resemble masonry or stucco. All tilt wall construction must have architectural reveals as approved by Declarant. No product regardless of composition which is manufactured to have a wood or non-masonry appearance will be considered masonry. All design, colors, coursing, and

pattern will be subject to approval by Declarant and in accordance with the standards set forth in the ADG.

(ii) Roof Design: Roof design shall be gable, Dutch gable, hip, shed, or other such design as Declarant may deem appropriate. Flat roofs with parapets may be approved on a case by case basis by Declarant.

(iii) Roofing Material: Standing seam metal, Tennessee v-crimp, and concrete tile are acceptable roofing materials. Declarant may approve other materials in its sole discretion.

(iv) Roof Structure: All objects mounted on the roof of any building, including, but not limited to, air-conditioning units, exhaust fans, and chillers, must be screened by parapets or other screening approved by Declarant. The height of the screen must be equal to the height of the tallest item being screened. If the screen is proposed to be less than the tallest item, a sight line study must be submitted to and approved by Declarant.

(v) Overhead Doors: All overhead doors, service entrances and installation entrances shall be limited to side or rear entrances only. For the purpose of determining the side or rear elevation, the building wall line parallel or most closely parallel to any public street shall be deemed the front. A

9

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
    Deputy                    Date

building located on a corner may be deemed to have two (2) front elevations by Declarant in its discretion.

(b) **Lighting.**

    (i)    Parking Lot Lighting:

        (1)    Lights shall not exceed fifteen feet (15') in height. Height variance may be granted by Declarant to accommodate overall light designs, provided the lights comply with spillage requirements.

        (2)    Pole and reflector design must be submitted for approval by Declarant.

        (3)    A complete light spillage diagram shall be submitted to Declarant, and is subject to Declarant approval.

        (4)    Parking lots will be fully lighted during business hours. Security lighting levels shall not exceed 15-20 foot candle 24 hours a day.

    (ii)    Landscape and walkway lighting plans shall be submitted to Declarant, and are subject to Declarant approval.

    (iii)    Wall or building lighting:

        (1)    All wall or building lighting shall be ground-mounted and visually shielded by berms or landscaping. Decorative mounted wall lighting will be considered on a case-by-case basis relative to the architecture of the structure(s).

        (2)    Lighting shall be designed so as to light only the exterior walls of the building.

        (3)    A complete light spillage diagram shall be submitted to Declarant, and is subject to Declarant approval.

        (4)    Buildings may be lighted from 6:00 a.m. to 10:00 p.m., San Antonio time. Lighting must be reduced to security level after 10:00 p.m. and shall not be increased over such level until 6:00 a.m. of the following day.

    (iv)    All lighting shall be designed to prevent the spill-over of light onto adjacent properties and shall be installed so as not to create traffic hazards due to impairment of vision and/or confusion with traffic signals. Not more than

10

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    7-16-14
      Deputy                 Date

0.25 foot candles will spill into a residential area from lights or signs within the Property.

(c) **Signs.**

    (i)    Permitted signs are those which:

        (1)    Identify the Property or a project situated thereon and/or give directions.

        (2)    Identify a building or a particular business.

        (3)    Monument signs which:

            (A)    Conform to the architectural spirit and integrity of the Property and the Shavano Creek Commercial Properties and all applicable Governmental Regulations of Governmental Authority.

            (B)    Are ground mounted and constructed of brick, masonry, stone, stucco or comparable material as approved by Declarant.

            (C)    Are no more than ten feet (10') in width and ten feet (10') in height. A sign less than ten feet (10') in height may be wider than ten feet (10'), but the surface area of the sign shall not exceed one hundred feet (100') square feet.

            (D)    Are used as reader board signs (defined as a sign listing more than one business or entity on one sign) and contain no more than five (5) business and entity names.

        (4)    Directional, advertising, promotional or for sale or lease signs that:

            (A)    Are no larger than four feet (4') wide and eight feet (8') tall.

            (B)    Are installed in a vertical position.

            (C)    Are placed at locations approved by Declarant.

            (D)    Are painted in a color scheme approved by Declarant.

    (ii)    Monument signs, wall signs and pole or pylon signs may be lighted from 6:00 a.m. to 10:00 p.m., San Antonio time.

11

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    7-16-14
    Deputy        Date

(iii)   Prohibited signs are:

    (1)   Portable signs of any kind.

    (2)   Bench signs.

    (3)   Pole signs or pylon signs or signs protruding above the building roof line or building parapet.

    (4)   Neon signs, blinking, rotating, animated, painted, Day-Glo colored signs, or internally lit signs (except internally lit signs as may be approved by Declarant on a case-by-case basis in the sole discretion of Declarant).

    (5)   For Sale or For Lease signs, except one (1) sign of not more than four feet (4') by eight feet (8') erected in a vertical position and used to advertise the Property or a particular part of the Property for sale or lease. Each For Sale or For Lease sign must be removed as soon as the Property is sold or leased.

    (6)   Inflatables (e.g. purple gorillas) or banner signs located on any building elevation, roof or any other portion of the Improvements or the Property.

    (7)   "Bandit" signs located on the Property or on any street outside the Property when such signs direct traffic to the Property.

(iv)   Approval: All signs must be architecturally coordinated with the development to which they apply and architecturally compatible with other signs on or approved for the Property. All plans for any new or replacement signs and placement thereof must conform to the current sign criteria promulgated by Declarant, and must be approved in writing by Declarant and conform to the standards set forth in the ADG.

(d)   **Dumpster and Other Screening.**

(i)   Screen walls shall be constructed of the same or comparable material comprising the exterior walls of the main building and be a minimum of six feet (6') in height but not less that one foot (1') taller than the item being screened. The screen wall shall screen from the view of all parking areas, major thoroughfares, major collection streets, public streets and other buildings or residences, the following items:

    (1)   Refuse containers, dumpsters, utility meters, transformers and satellite dishes.

12



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____  7·16·14
    Deputy           Date

(2) Loading areas, service areas and outside storage, other than normal parking associated with the use of the Property.

(ii) A wood framed non-climb mesh fence with dense landscaping may be substituted for the screen wall described above in the areas approved by Declarant.

(iii) Gates in screen walls shall be solid and of a design and material approved by Declarant. Such gates shall remain closed at all times.

(iv) All screening and outdoor storage must comply with applicable Governmental Regulations of Governmental Authority.

(v) Outdoor HVAC condensers shall be screened to limit off-site sound intrusion into neighboring residential areas.

(e) **Fences.**

(i) No fence may be built within view of any public or private street unless the fence conforms to the requirements of Section 5(d) above or is of a design approved by Declarant.

(ii) No fence may be erected forward of the building front setback line as prescribed herein and by applicable Governmental Regulations.

(iii) All fences shall be a minimum of six feet (6') in height. Height restriction for fences may be reduced to not less than five feet (5') at the discretion of Declarant.

(iv) There is an existing eight foot (8') cedar fence along the north and east boundary of the Property ("Existing Fence"). The Owner(s) of the Property on which the Existing Fence is situated shall continuously maintain the Existing Fence in good condition, including the replacement of broken or missing slats and support structures to ensure the Existing Fence shall not become more than ten degrees (10°) out of vertical alignment.

(f) **Parking and Loading Areas.**

(i) Parking lots, driveways and service roads shall be paved with concrete, asphalt or other permanent material approved by Declarant.

(ii) All driveway approaches must be concrete from the street pavement to the property line.

13



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
        Deputy                          Date

(iii) All parking areas shall conform to or exceed the then current requirements of the City of San Antonio building codes and landscape ordinances and applicable ordinances of the City of Shavano Park, Texas, as amended from time to time.

(iv) No inventory, vehicles, equipment or other property may be maintained, stored, or placed outdoors without the express written consent of the Declarant, except for overnight and weekend or holiday parking of business vehicles, and vehicles kept within the loading area of the Improvements and appropriately screened.

(v) No on-street parking shall be permitted.

(vi) Owners shall be responsible for managing the parking of vehicles by their employees, contractors, customers and invitees.

(g) **Curb Cuts.** The number and location of all curb cuts on Huebner Road and Lockhill Selma Road will be subject to approval by Declarant.

(h) **Setbacks.** All setbacks on the Property shall conform to applicable Governmental Regulations.

(i) **Off-street parking areas.**

(i) Shall be curbed and paved.

(ii) Shall be built and maintained so that grades are acceptable from a civil engineering and public safety standpoint and with due regard for any overall grading plan for the Property.

(iii) Shall be landscaped in accordance with either the City of San Antonio landscape ordinance or the following guidelines, whichever is more stringent:

(1) There shall be the equivalent of one (1) planting area containing a tree and one hundred square feet (100') of planting area for each ten (10) parking spaces. Landscaped areas within setbacks or landscape buffers shall count as planting areas for purposes of calculating the foregoing ratios. Trees shall be live oaks (or equal quality) and shall be at least twelve feet (12') in height and four inches (4") in caliper measured thirty-six inches (36") from the ground. Groupings of trees with smaller calipers may be deemed to satisfy this requirement as determined by Declarant.

14

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          1-16-14
        Deputy                    Date

(2)    All landscaping shall be maintained in a neat and orderly condition. The location of plant material and its design shall conform to the landscape requirements set forth herein and in the ADG.

(3)    Landscape plans for parking lots shall be submitted to Declarant for review along with building plans.

(iv)    There shall be no on-street parking permitted within the Property.

(j)    **Landscape Requirements and Guidelines.**

(i)    In connection with the preliminary design of a building or project, Owner will furnish Declarant two (2) copies of a detailed landscaping plan which shall comply with the requirements from time to time promulgated by Declarant. Such plans shall be drawn to scale and shall include delineation of existing or proposed structures, pavement and other site features, and shall designate by name, size, spacing and location the plant material to be installed. The approximate location, size and type of all existing trees, six inches (6") in diameter (DBH) or greater, or significant motts (groupings) of smaller trees shall also be clearly shown. After a landscaping plan has been approved and instituted, Owner is required to submit to Declarant a written request for any change in the plan. Owner shall at all times maintain the minimum required vegetation as shown in the original plans. Owner shall make every effort to preserve significant natural vegetation. Revised landscape plans shall incorporate all commercially reasonable changes suggested by Declarant and shall be resubmitted for final approval by Declarant.

(ii)    Landscaping shall consist of a combination of undisturbed areas, and designed and enhanced areas of native plants including, grasses, trees, shrubs, flowers, and ground cover as listed in the ADG. Landscapes will consist of plants and trees that are drought tolerant, indigenous to the area and require minimum amounts of water to survive and prosper. Low flow, water efficient systems will be used to irrigate the landscaping material that requires periodic supplemental watering. Installation of all landscaping and irrigation systems must be completed within ninety (90) days following the completion of the initial building and parking areas on the Property. Owner shall be responsible for watering and maintaining the landscaping on the Property owned by it, including landscape buffers and easements and pedestrian easements.

(iii)    The reasonable cost of any watering or maintenance of vegetation or landscaping by the Declarant on the Property as a result of Owner's failure to do so for more than five (5) business days after receipt from Declarant of written notice detailing such failure shall be billed to Owner

16



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    
    Deputy           Date

and paid by Owner to Declarant within ten (10) days after receipt of such invoice.

(iv)   Non-Developed Areas:

    (1)   Non-developed areas, including drains, drainage areas, creeks, greenbelts and buffers, shall be left in a relatively natural state and shall not be cleared, mowed or otherwise disturbed except as designated and approved by Declarant or required by applicable Governmental Authority.

    (2)   Each Owner shall selectively and minimally clear a continuous area twelve feet (12') in depth from the curb line of all publicly used streets and maintain and clean this area regularly.

    (3)   Each Owner will be responsible for cleaning and removing trash from the undeveloped areas.

(v)   All landscape plans and materials lists shall be reviewed and approved by Declarant prior to installation.

(vi)   Owner shall be responsible for the installation, maintenance, and upkeep of the landscaping and a water efficient irrigation system. All such items must be constructed and installed concurrently with the development of a project on such portion of the Property.

(vii)   Should any Owner neglect, damage, or in any way destroy, or allow to be destroyed any vegetation or landscaping upon the Property, such Owner shall be solely responsible for the repair or replacement thereof, and, in absence of timely repair or replacement thereof by the Owner, within thirty (30) days after notice thereof from Declarant, the Declarant may perform such repair or replacement on behalf of the Owner. Owner shall then reimburse Declarant for the reasonable costs thereof within five (5) business days after demand therefor together with reasonable supporting evidence of such expenses.

(k)   **Sidewalks**.

(i)   Required Sidewalks:  Each Owner of the Property will construct and continuously maintain all sidewalks required by Governmental Authority. All required sidewalks will be constructed of broom finish concrete or other material acceptable to the City and Declarant, and shall be constructed concurrently with the development of a project on such portion of the Property. Declarant may require the preservation of significant trees within the area otherwise designated for the required sidewalks, in which

16



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____     9·(6·1·)
    Deputy          Date

event the Owner will be required to vary the location of the sidewalk to accommodate such tree(s).

(ii) Optional Sidewalks: All other sidewalks shall be optional but shall require the approval of Declarant and shall be shown on plans submitted to Declarant. Optional sidewalks may be either broom finished concrete or pebble finish concrete.

(l) **Building Height Restrictions.** All buildings on the Property will be limited to forty-five feet (45') in height, as measured from the average finished ground level to the highest point of the roof's surface if a flat surface, or to the deck line of mansard roofs, or to the mean height level between eaves and ridge for hip and gable roofs (excluding chimneys, cooling towers, ornamental cupolas, domes or spires, parapet walls not exceeding four feet (4') in height, and basements).

(m) **Maintenance.**

(i) Construction Sites: Each Owner shall maintain construction sites in a clean condition, removing accumulation of scrap and rubbish regularly and storing construction materials and equipment in a neat, orderly manner. On-site burning or disposal of trash shall be prohibited. Each Owner shall, during construction, provide adequate dumpsters and port-a-potties on site and be responsible for having these receptacles emptied and reset on a regular basis.

(ii) Developed Property: Outdoor storage of trash, materials, equipment and vehicles must be screened as set forth in Section 5(d) hereof. All trash must be removed on a regular basis, and in no event less frequently than once weekly.

## 6. GOVERNMENTAL REQUIREMENTS.

(a) **Compliance.** All improvements located, erected, constructed and installed upon the Property and all activities of each Owner, their tenants, invitees, agents, employees and contractors on or about the Property, shall conform to and comply with all applicable Governmental Regulations.

(b) **Precedence Over Less Stringent Governmental Regulations.** If the covenants, conditions and restrictions set forth in this Declaration set or establish minimum standards or limitations or restrictions on use in excess of any Governmental Regulations, the covenants, conditions and restrictions set forth in this Declaration shall take precedence and prevail over any less stringent Governmental Regulations. Similarly, when any Governmental Regulations are more stringent than those set forth in this Declaration, the more stringent Governmental Regulations shall control.

VOL 9404 PG 0852

17



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          4-16-14
          Deputy                              Date

(c)　**Remedies of the Declarant.**　By acceptance of a deed to all or any part of the Property, each Owner agrees that Declarant shall have the right to enter upon the Property if one or more conditions or activities prohibited by applicable Governmental Authority or this Declaration is maintained, or on which there has been a failure to perform any act required by applicable Governmental Authority or this Declaration, for the purpose of curing any such violation, provided that Owner has been given five (5) business days prior written notice and has failed to remedy the violation within such time, or if such violation cannot be remedied within such period, has failed to commence such remedy within such period and pursue the same diligently to completion. EACH OWNER INDEMNIFIES AND HOLDS HARMLESS DECLARANT FROM ALL COST AND EXPENSE OF ANY SUCH CURATIVE ACTION AND ANY COST OR EXPENSE OR PENALTIES OR FINES LEVIED BY ANY GOVERNMENTAL AUTHORITY AS A RESULT OF THE ACT OR FAILURE TO ACT OF THE OWNER WITH RESPECT TO THE PROPERTY. THE FOREGOING REMEDY SHALL BE CUMULATIVE OF ALL OTHER REMEDIES FOR VIOLATIONS OF PROVISIONS OF THIS DECLARATION.

(d)　**Water Pollution Abatement Plan.** The Property lies within the area classified as the Edwards Aquifer Recharge Zone and as such is subject to the rules and regulations of agencies of the State of Texas, including the Texas Natural Resources Conservation Commission (TNRCC), governing the use of said land, in addition to the Governmental Regulations of the City of San Antonio, the City of Shavano Park, and other Governmental Authority. Each Owner is advised that such requirements and prohibitions may relate to the types of pesticides and fertilizers which may be used, minimum topsoil requirements, inspection of sewer laterals prior to covering, and criteria standards for sewer pipe, among other matters. Each Owner is responsible for ascertaining all such requirements and prohibitions with respect to the Property and, by acceptance of a deed to all or any part of the Property, agrees to abide by the same. No statement herein, nor action by the Declarant shall act to relieve any Owner from such duty of compliance. Each Owner is advised to obtain, read and use <u>What's Bugging You?  A Practical Guide to Pest Control</u>, available from the Edwards Aquifer Authority (210/222-2204), or equivalent information produced by recognized authorities such as the Soil Conservation Service, Texas Department of Agriculture, U.S. Dept. of Agriculture, S.A.W.S., etc.

　　In addition to the foregoing, each Owner is required to abide by and comply with all of the terms of the Water Pollution Abatement Plan (WPAP) approved by TNRCC applicable to the Property and certain other properties. EACH OWNER IS ADVISED THAT THE WPAP CONTAINS RESTRICTIONS APPLICABLE TO THE PROPERTY. A copy of the WPAP may be obtained from Declarant.

(e)　**Additional Obligations.**　By acceptance of a deed to the Property, or by initiating construction of Improvements to the Property, each Owner assumes responsibility for complying with all certifications, permitting, reporting, construction, and procedures required under all applicable Governmental Regulations, including, but not

18



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____　　　7-16-14
　　　　　Deputy　　　　　　　　　　　Date

limited to those promulgated or issued by the Environmental Protection Agency and related to Storm Water Discharges from Construction Sites (see Federal Register, Volume 57, No. 175, Pages 41176 et seq.), and with the responsibility of ascertaining and complying with all regulations, rules, rulings, and determinations of the Texas Natural Resources Conservation Commission (TNRCC), related to the Property, including, without limitation, the provisions of Chapters 325 and 331, Texas Administrative Code, and any specific rulings made pursuant to the terms thereof. The foregoing references are made for the benefit of each Owner and do not in any way limit the terms and requirements of this covenant and the requirement that Owners and contractors comply with all Governmental Regulations, and any plan required by such Governmental Regulations, such as a Storm Water Pollution Plan, affecting the Property and construction site with which they are associated, including delivery to Declarant of a certification of understanding relating to any applicable NPDES permit prior to the start of construction. **EACH OWNER, BY ACCEPTANCE OF A DEED TO ALL OR ANY PART OF THE PROPERTY OR UNDERTAKING THE MAKING OF IMPROVEMENTS TO THE PROPERTY, AGREES TO HOLD HARMLESS, DEFEND AND INDEMNIFY DECLARANT FROM AND AGAINST ALL COST (INCLUDING REASONABLE ATTORNEYS FEES AND COURT AND OTHER COSTS), LOSS, LIABILITIES, FINES, PENALTIES OR DAMAGE OCCASIONED BY OWNER'S FAILURE TO ABIDE BY ANY APPLICABLE GOVERNMENTAL REGULATIONS RELATED TO THE PROPERTY.**

(f)      **Annexation.** The Property lies within the extraterritorial jurisdiction of the City of Shavano Park ("CSP") and Declarant has requested the Property be annexed by CSP. It is anticipated that CSP will or may impose use or development requirements or standards on the Property or portions of the Property as a condition of approval of plats for one or more lots or in connection with such platting process. Each Owner is hereby advised that it is Declarant's intent that this Property be annexed into the city limits of the City of Shavano Park. All Owners shall comply with all conditions or restrictions imposed in connection with such annexation. No Owner will withdraw the request for annexation submitted to CSP without Declarant's prior written approval.

7.      **EASEMENTS.**

(a)      **Reserved Easements.** All dedications, limitations, restrictions and reservations shown on a plat of the Property or any part thereof or in any other instrument heretofore or to be recorded in the Deed and Plat Records and/or Real Property Records of Bexar County, Texas, and the easements, rights-of-way, restrictions, and related rights referenced therein are incorporated herein by reference and made a part of this Declaration for all purposes, as is fully set forth herein, and shall be construed as being adopted in each and every contract, deed or conveyance executed or to be executed by or on behalf of Declarant conveying any part of the Property.

(b)      **Drainage Easements.** Declarant hereby creates, declares, grants and reserves for the benefit of Declarant, Bexar County, the City, and each owner of all or any part of

19



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          7·16·15
        Deputy                            Date

the Shavano Creek Commercial Properties, and any public or private providers of utility services to the Property and/or the Shavano Creek Commercial Properties, and their respective successors and assigns, nonexclusive easements for drainage on, over, under and across (i) all areas within ten (10) feet of the center line of all natural drainage courses on the Property, and (ii) the Property for the acceptance of stormwater drainage from the Property and the Shavano Creek Commercial Properties, before and after development thereof (collectively, the "Drainage Easements"). Each Owner shall, upon request by Declarant or other easement holder, or their respective successors or assigns, execute and deliver to the requesting party such instruments in recordable form necessary or desirable to further evidence and/or more specifically identify the as-built or designated location of the Drainage Easements. No Owner may perform or cause to be performed any act which would alter or change the course of the Drainage Easements in a manner that would divert, increase, accelerate or impede the flow of water over and across the Drainage Easements. More specifically, and without limitation, no Owner may:

(i) Alter, change or modify the existing natural vegetation or design of the Drainage Easements in a manner that changes the character of the design or original environment of such Drainage Easements; or

(ii) Alter, change or modify the existing configuration of the Drainage Easements, or fill, excavate or terrace such easements or remove trees or other vegetation therefrom without the prior written approval of Declarant; or

(iii) Construct, erect or install a fence or other structure of any type or nature within or upon the Drainage Easements; provided, however, that fences may be permitted in the event the proper openings are incorporated therein to accommodate the flow of water over the affected Drainage Easement as determined by a qualified engineer and the applicable Governmental Authority authorizes the construction; or

(iv) Permit storage, either temporary or permanent, of any type upon or within the Drainage Easements; or

(v) Place, store or permit to accumulate trash, garbage, leaves, limbs or other debris within or upon the Drainage Easements, either on a temporary or permanent basis.

Declarant may, from time to time, prepare or require the preparation of a grading plan for the Property. A copy of the grading plan shall be maintained by the Declarant. By acceptance of a deed to all or any part of the Property, each Owner covenants and agrees to ensure compliance that the Property is graded and maintained in accordance with the grading plan to the extent that compliance can be achieved without materially damaging or compromising the integrity of improvements on the Property, and that the

20

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          7-16-14
        Deputy                          Date

drainage of the Property is maintained in accordance with a grading plan prepared by a professional engineer in connection with the construction of any Improvements on the Property.

(c) **Utility Easements.** Easements for Installation and maintenance of utilities, cable television, and other utility facilities to service the Property and the Shavano Creek Commercial Properties have been reserved as shown on the plats and/or as provided by instruments of record. Declarant hereby creates, declares, grants and reserves for the benefit of Declarant, Bexar County, the City, and each owner of all or any part of the Shavano Creek Commercial Properties, and any public or private providers of utility services to the Property and/or the Shavano Creek Commercial Properties and their respective successors and assigns, nonexclusive easements for utility purposes over, under, within and upon the Property for the purposes of constructing, installing, inspecting, maintaining, repairing and replacing from time to time any and all utility lines, systems and facilities (including, without limitation, sanitary sewer, electric, gas, water, cable television and other utility services) from time to time deemed reasonably necessary or appropriate by Declarant for development of the Property and/or the Shavano Creek Commercial Properties. Each Owner shall upon request by Declarant or other easement holder, or their respective successors or assigns, execute and deliver to the requesting party such instruments in recordable form necessary or desirable to further evidence and/or more specifically identify the as-built or designated location of the easements reserved herein. All utility facilities on the Property shall be underground, except for necessary above-ground appurtenances to such facilities required by applicable Governmental Authority. The surface of easement areas for underground utility services may be used for planting of shrubbery, trees, lawns or flowers and for paving of driveways, unless otherwise specifically prohibited by the plat or any other recorded easement. The easement area of the Property, if any, and all improvements in such easement area shall be maintained continuously by the Owner, except for those improvements for which Governmental Authority or any utility or private company is responsible.

(d) **Certain Other Easements.** There is hereby created in favor of the easement holders, the Declarant, and their respective successors and assigns, a right of ingress or egress across, over, and under the Property for the purpose of installing, replacing, repairing, and maintaining all facilities for utilities, including, but not limited to, water, sewer, telephone, electricity, gas, and appurtenances thereto, and to construct, reconstruct, repair, correct, replace, or maintain any wall, fixture, light, or other structure or item required to be constructed or maintained under the terms hereof or to correct or remove any condition prohibited to be maintained under the terms hereof; provided, however that all such activities shall be conducted in such a way as to minimize any impact on the business operated on the servient property and that once such activities are completed all improvements including landscaping within the affected portion of the easement shall be restored at the sole cost and expense of the easement owner.

21

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED: _____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          2-16-14
        Deputy                     Date



(e) **Maintenance of Easements.** By acceptance of a deed to all or any part of the Property, each Owner covenants and agrees to keep and maintain, in a neat and clean condition, any easement which may traverse any portion of the Property, including, without limitation, removing weeds, mowing grass and trimming shrubbery and trees, if any, within such easement area.

(f) **Damages.** Declarant shall not be liable for any damages done by any utility company or their assigns, agents, employees or servants, using any easements now or hereafter in existence, whether located on, in, under or through the Property, to persons or to property, including, without limitation, fences, shrubbery, trees or flowers or other property now or hereinafter situated on, in, under, or through the Property. No provision hereof related to placement or the nature of structures or conditions on the Property, nor the approval thereof, express or implied, by the Declarant shall affect the rights of easement owners nor enlarge the rights of Owner with regard to the construction or maintenance of improvements or conditions within the easement area.

## 8. ENFORCEMENT.

(a) **General.** Declarant and each Owner shall have the right, but not the obligation, to enforce all restrictions and covenants imposed by this Declaration. Failure to enforce any covenant or restriction shall not be deemed a waiver of the right. The reservation of the right of enforcement shall not create an obligation of any kind to enforce same. Any court action brought to enforce any obligation or restriction hereunder shall, if successful, entitle the prevailing party in such action to the award of costs and attorney's fees.

(b) **Declarant's Remedies.** If any Owner fails to construct, landscape or maintain its Property, as specified herein, Declarant shall have the right, but not the obligation, to proceed as follows:

(i) Give the Owner written notice of such failure whereupon the Owner must stop work immediately, submit a plan for remedy within thirty (30) days, and perform the required remedy in a reasonable time as identified by Declarant.

(ii) Should the Owner fail to fulfill his duty within thirty (30) days, then Declarant shall have the right, but not the obligation, to perform such remedy without any liability for damages or wrongful entry or trespassing.

(iii) The defaulting Owner or occupants (including lessees) of any part of the Property in which such work is performed shall jointly and severally be liable for the cost of such work and shall promptly reimburse Declarant for such cost.

22



CERTIFICATE

The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____
         Deputy                              Date

(iv)    Should the Owner or occupant fail to reimburse Declarant within thirty (30) days after receipt of its statement, then the debt shall be a debt of all such persons, jointly and severally, and shall constitute a lien against that portion of the Property on which the work was performed.

(v)    The liens created shall be subordinate and inferior to any and all mortgages and/or deeds of trust filed of record prior to filing of the lien affidavit by Declarant.

(vi)    Failure to pay on time will result in the over-due amount bearing interest at the highest, per annual, legal rate of interest permitted and the Owner shall additionally be obligated to pay reasonable attorney's fees incurred by Declarant and such sums shall be subject to the liens of Declarant.

(vii)    Declarant shall have the right to enter the grounds of any lot or tract within the Property, at any time for the purposes of inspecting the Property and determining the adequacy of the Owner's maintenance without any liability for damage, wrongful entry or trespassing.

(c)    **Easement Holders.** Declarant, the owners of all or any part of the Shavano Creek Commercial Properties, and all other holders of the easements referenced in Section 7 herein shall have the right to enforce all restrictions, covenants and provisions with respect to the easements as set forth in Section 7 herein. Failure to enforce any such provision shall not be deemed a waiver of the right of enforcement. Any court action brought to enforce any obligation or restriction pursuant to Section 7 shall, if successful, entitle the prevailing party in such action to the award of costs and attorney's fees.

## 9.    PROPERTY CONDITION.

(a)    **Proximity to Quarries.** The Property is located approximately one-half (1/2) mile southeast of the Vulcan Materials stone quarry and approximately two and one-half (2½) to three (3) miles southwest of the Martin Marrietta (Beckman Quarry East and Beckman Quarry West) stone quarry, as depicted on Exhibit E attached hereto and incorporated herein (collectively, the "Quarries").



    EACH PROSPECTIVE PURCHASER IS ADVISED THAT DIVERSE MATERIAL EXTRACTION AND PROCESSING HAVE AND WILL OCCUR ON THE QUARRY PROPERTIES, AND MAY INCLUDE, WITHOUT LIMITATION, MINING, BLASTING, EXTRACTION, PROCESSING, HANDLING, CRUSHING, WASHING, SCREENING, SORTING, STOCKPILING, AND/OR THE PRODUCTION, PACKAGING, DISTRIBUTION AND TRANSPORTATION OF AGGREGATE, CONCRETE AND CONCRETE PRODUCTS, INCLUDING ACTIVITIES REQUIRED FOR THE SUPPORT OF SUCH OPERATIONS, SUCH AS VEHICLE MAINTENANCE AND REPAIR FACILITIES, OFFICE AND DISPATCH FACILITIES, OUTSIDE STORAGE OF

23



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____    
    Deputy            Date

MATERIALS, AND OTHER OPERATIONS INCIDENTAL TO QUARRY OPERATIONS. COMPLETE INFORMATION ON THE QUARRY OPERATIONS, INCLUDING BLAST LEVELS AND SCHEDULES, OPERATING HOURS AND OTHER INFORMATION SHOULD BE OBTAINED FROM THE QUARRY OPERATORS, MARTIN MARIETTA MATERIALS SOUTHWEST, INC., 17910 IH-10 WEST, SAN ANTONIO, TEXAS 78257, TELEPHONE 210-698-8500, AND VULCAN MATERIALS COMPANY, 800 ISOM ROAD, SAN ANTONIO, TEXAS 78216, TELEPHONE 210-524-3500.

Declarant makes no warranties, representations or covenants with respect to the effect on the Property or the value thereof of the blasting or other quarry operations at the Quarries. By completing the purchase of all or any part of the Property, each Owner acknowledges and agrees that it has been afforded full access to, and has fully and completely inspected and investigated all aspects of the Property to its satisfaction, including the proximity of the Property to the Quarries and the operations at the Quarries, and has made an independent determination of the suitability of the Property for Owner's intended use. BY PURCHASING ALL OR ANY PART OF THE PROPERTY, EACH OWNER AGREES (i) TO WAIVE, ACQUIT AND RELEASE DECLARANT, AND (ii) NOT TO INSTITUTE SUIT AGAINST DECLARANT WITH RESPECT TO THE PROPERTY ARISING OUT OF THE PROXIMITY OF THE PROPERTY TO THE QUARRIES AND THE OPERATIONS OF THE QUARRIES.

(b) Indemnification and Release. EACH PROSPECTIVE PURCHASER IS RESPONSIBLE FOR THOROUGHLY INSPECTING AND EXAMINING THE PROPERTY AND FOR CONDUCTING SUCH INVESTIGATIONS OF THE PROPERTY AS IT DEEMS NECESSARY TO EVALUATE ITS PURCHASE. BY COMPLETING THE PURCHASE OF ALL OR ANY PART OF THE PROPERTY, EACH PROSPECTIVE PURCHASER IS ACKNOWLEDGING THAT IT IS PURCHASING THE PROPERTY ON AN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS.

BY PURCHASING ALL OR ANY PART OF THE PROPERTY, EACH OWNER AGREES TO INDEMNIFY AND HOLD HARMLESS AND TO UNCONDITIONALLY RELEASE DECLARANT, ITS PARTNERS, OFFICERS, DIRECTORS, CONTRACTORS, EMPLOYEES AND AGENTS FROM AND AGAINST ANY CLAIMS, COSTS, FEES, EXPENSES, DAMAGES OR LIABILITIES THAT AN OWNER, HIS FAMILY, EMPLOYEES, GUESTS, TENANTS, CONTRACTORS AND ANY OTHER INVITEES MAY SUFFER OR INCUR AS A RESULT OF, ARISING OUT OF, OR RELATED TO ANY CONDITION ON, IN OR UNDER ALL OR ANY PART OF THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, CAVES, SINKHOLES, STREETS, TREES WITHIN OR NEAR THE STREET RIGHTS-OF-WAY, DRAINAGE FACILITIES, AND OTHER DANGEROUS OBJECTS OR CONDITIONS OF WHICH DECLARANT HAS NO ACTUAL KNOWLEDGE AS OF THE DATE OF RECORDING OF THIS INSTRUMENT OR AS TO WHICH DECLARANT HAS MADE A WRITTEN DISCLOSURE TO OWNER.

24



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:_____     1-16-14
       Deputy            Date

10. **GENERAL PROVISIONS.**

(a) **Severability.** Invalidation of any one of the provisions, covenants or restrictions set forth in this Declaration by judgment or court order shall in no wise affect any other provisions which shall remain in full force and effect.

(b) **Term.** The foregoing covenants are made and adopted to run with the land, and shall be binding upon the undersigned and all parties and persons claiming through and under the undersigned until December 31, 2026, at which time said covenants will be automatically extended for successive periods of twenty-five (25) years, unless an instrument signed by Declarant and the then record Owners in the aggregate of 2/3rds or more of the gross land area of the Property has been recorded agreeing to terminate or change said covenants in whole or in part.

(c) **Assignment by Declarant.** Notwithstanding any provision in this Declaration to the contrary, Declarant may in writing filed of record expressly assign, in whole or in part, any of the privileges, exemptions, rights and duties under this Declaration to any other person or entity and may permit the participation, in whole or in part, by any other person or entity in any of its privileges, exemptions, rights and duties hereunder. Upon assignment by Declarant of any or all of such rights, such Declarant shall no longer be liable for performance of such assigned rights provided that the assignee expressly assumes in the recorded assignment the obligations of Declarant that are assigned.

(d) **Amendment.** This Declaration may be amended by written instrument executed by the then Owners in the aggregate of 2/3rds or more of the gross land area of the Property and the Declarant, upon recording of such written instrument in the Real Property Records of Bexar County, Texas. Notwithstanding the foregoing, Declarant shall have the right to file an amendment to this Declaration, without the necessity of joinder by Owner, for the limited purposes of correcting a clerical error.

(e) **Singular Includes Plural.** Unless the context requires a contrary construction, the singular shall include the plural and the plural the singular, and the masculine, feminine or neuter shall each include the masculine, feminine and neuter.

(f) **Captions.** All captions and titles used in this Declaration are intended solely for convenience of reference and shall not enlarge, limit or otherwise affect that which is set forth in any of the paragraphs or sections hereof.

(g) **Notice.** Whenever written notice to an Owner is permitted or required hereunder, such notice shall be given by mailing such notice to the address of such Owner appearing on the records of the Declarant, unless such Owner has given written notice to the Declarant of a different address, in which event such notice shall be sent to the Owner at the address so designated. Such notice shall conclusively be deemed to have been given as of the date such notice is deposited in the United States Mail.

25



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          7-16-14
        Deputy                         Date

certified mail, return receipt requested, properly addressed, whether actually received by the addressee or not.

(h)  **Governing Law.**  This Declaration shall be governed by and construed in accordance with the laws of the State of Texas and shall be performable in Bexar County, Texas.

(i)  **Counterparts.**  This Declaration may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

26

CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
         Deputy                              Date

**DECLARANT:**

**SHAVANO CREEK COMMERCIAL PARTNERSHIP UNIT 1, LTD., a Texas limited partnership**

By Its General Partner:

**BITTERBLUE, INC., a Texas corporation**

By: _Wm. E. Powell_

Wm. E. Powell
Chief Executive Officer

STATE OF TEXAS        §
                      §
COUNTY OF BEXAR       §

This instrument was acknowledged before me on _October 22_, 2001, by Wm. Eugene Powell, Chief Executive Officer of Bitterblue, Inc., a Texas corporation, as the General Partner of Shavano Creek Commercial Partnership Unit 1, Ltd., a Texas limited partnership, on behalf of said corporation and limited partnership.

_Notary Public, State of Texas_



MELANIE L. KENWORTHEY
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 02-13-2005

VOL 9104 PG 0862

**AFTER RECORDING, RETURN TO:**
Ms. Jamie M. Wilson
Kerr, Wilson & Negrón, P.C.
750 E. Mulberry, Suite 510
San Antonio, Texas 78212

27



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          7-16-17
        Deputy                   Date

Exhibits:
Exhibit A – Property
Exhibit B – Shavano Creek Commercial Properties
Exhibit C - Cooke Plans
Exhibit D – Restricted Area
Exhibit E – Location of Quarries

M:\data\jmw\denton\cooke\protcove3.doc

28



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
              Deputy                                   Date

# EXHIBIT A

## FIELD NOTES
### FOR

A 1.838 acre, or 80,050 square feet tract of land being out of Lot 1400 of the Shavano Park Unit 16A Subdivision recorded in Volume 9509, Page 209-212 of the Deed and Plat Records of Bexar County Texas, out of the McRae Survey No. 391, Abstract 482, County Block 4782 of Bexar County Texas. Said 1.838 acre tract being more fully described as follows:

COMMENCING At a found ½" iron rod at the most easterly return of the intersection of the northwest right-of-way line of Huebner Road and the northeast right-of-way line of Lockhill-Selma Road, the Southeast corner of the said Lot 1400;

THENCE: N 41°50'46"E, along and with the northwest right-of-way line of said Huebner Road and the southeast line of said Lot 1400, a distance of 410.00 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson" at the POINT OF BEGINNING;

THENCE: N 48°09'14"W, departing the northwest right-of-way line of said Huebner Road, a distance of 204.21 feet to a set ½" iron rod with yellow cap marked "Pape-Dawson" for an interior angle within said Lot 1400;

THENCE: S 41°50'46"W, a distance of 214.67 feet to a point;

THENCE: N 48°16'11"W, a distance of 260.73 feet to a point on the northwest line of said Lot 1400, being in the southeast line of Lot 1404 of the aforementioned Shavano Park Unit 16A Subdivision;

THENCE: N 47°42'29"E, along and with the northwest line of said Lot 1400 and the southeast line of said Lot 1404, at 121.73 feet passing the common corner of said Lot 1404 and Lot 1405 of the Shavano Park Unit 16A Subdivision, and a total distance of 276.64 feet to a found ½" iron rod at the northernmost corner of said Lot 1400 and the easternmost corner of said Lot 1405, also being at a corner on the southwest line of Lot 1417 of said Shavano Park Unit 16A Subdivision;

THENCE: S 48°09'14"E, along and with the northeast line of said Lot 1400 and the southwest line of said Lot 1417, at 186.94 feet, passing the common corner of Lot 1417 and Lot 1418 of said Subdivision, and a total distance of 436.22 feet to a found ½" iron rod on the northwest right-of-way line of the aforementioned Huebner Road;

THENCE: S 41°50'46"W, along and with the northwest right-of-way line of said Huebner Road a distance of 60.00 feet to the POINT OF BEGINNING and containing 1.838 acres in Bexar County, Texas. Said tract being described in accordance with a survey made on the ground and a survey map prepared by Pape-Dawson Engineers, Inc..

| | |
|---|---|
| PREPARED BY: | Pape-Dawson Engineers, Inc. |
| DATE: | June 12, 2001 |
| JOB No.: | 9556-01 |
| DOC.ID.: | n:\survey01\1-9600\9556-01\Fnotes.doc |

6-12-

**PAPE-DAWSON ENGINEERS, INC.**

555 East Ramsey | San Antonio, Texas 78216 | Phone: 210.375.9000 | Fax: 210.375.9010 | info@pape-dawson.com



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
        Deputy                              Date

## EXHIBIT B

## SHAVANO CREEK COMMERCIAL PROPERTIES

Lot 1400, Shavano Park Unit 16A, in Bexar County, Texas, according to plat thereof recorded in Volume 9509, Page 209, Deed and Plat Records of Bexar County, Texas, **SAVE AND EXCEPT** the 1.838 acre tract of land described in Exhibit A attached to this Declaration.

30



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
          Deputy                                    Date

## EXHIBIT C

### COOKE PLANS

Grading Plan:   Grading Plan for Huebner Road project, prepared by G.E. Reaves Engineering, Inc., Robert Thornber, P.E. #83416, Job No. 01-0928, dated 9-4-01, Sheet C1.0.

Building Plans:   A new building for Luv – N – Care Child Development Centers, Huebner Road at Lockhill-Selma Road, San Antonio, Texas, prepared by Tschoepe & Associates, consisting of the following:

Architectural:
A0      Cover Sheet
A1      Floor Plan
A2      Interior Elevations
A3      Exterior Elevations
A4      Reflected Ceiling Plan
A5      Building Sections
A6      Roof Plan and Details
A7      Wall Sections and Details
A8      Schedules
Structural:
S1      Foundation and Roof Framing Plans
S2      Building Sections and Details
S3      Sections and Details
S4      Retention Tank Plans and Details
Mechanical:
M1      First Floor – H.V.A.C.
M2      Attic and Pool House – H.V.A.C.
M3      Mechanical Details and Schedules
Electrical:
E1      First Floor – Lighting Plan
E2      First Floor – Power Plan
E3      Attic and Pool House – Lighting Plan
E4      Attic – Power Plan
E5      Riser Diagram and Schedules
Plumbing:
P1      First Floor Plumbing
P2      Pool House Plumbing
P3      Plumbing Details
P4      Plumbing Schedules

31



CERTIFICATE
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY:           7-16-14
          Deputy                    Date

# EXHIBIT D

## RESTRICTED AREA





**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____
      Deputy               Date

## EXHIBIT E

## LOCATION OF QUARRIES



**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but is otherwise a full, true and correct copy of the original on file and of record in my office.

ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____          9·16·15
          Deputy                          Date

**RECORDER'S MEMORANDUM**
AT THE TIME OF RECORDATION, THIS
INSTRUMENT WAS FOUND TO BE INADEQUATE
FOR THE BEST PHOTOGRAPHIC REPRODUCTION
BECAUSE OF ILLEGIBILITY, CARSON OR
PHOTO COPY, DISCOLORED PAPER, ETC.

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
the date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on

OCT 2 5 2001



COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20010188420
# Pages 34
10/25/2001  02:48:26 PM
Filed & Recorded in
Official Records of
BEXAR COUNTY
GERRY RICKHOFF
COUNTY CLERK
Fees $75.00

**CERTIFICATE**
The page to which this certificate is affixed may have been altered to redact confidential personal information but
is otherwise a full, true and correct copy of the original on file and of record in my office.



ATTESTED:_____
GERARD C. RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _____    7·16·14
            Deputy                         Date

# Gerard Rickhoff



COUNTY CLERK      BEXAR COUNTY

BEXAR COUNTY COURTHOUSE
100 DOLOROSA, SUITE 104
SAN ANTONIO, TEXAS 78205

## CERTIFICATE

STATE OF TEXAS §

COUNTY OF BEXAR §

    I, GERARD RICKHOFF, COUNTY CLERK OF BEXAR COUNTY, TEXAS, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT COPY OF THE OFFICIAL PUBLIC RECORDS OF REAL PROPERTY OF BEXAR COUNTY, TEXAS, NOW IN MY LAWFUL CUSTODY AND POSSESSION AS SAME APPEARS OF RECORD FILED IN:

VOLUME _9184_      PAGE _1836_

    THIS COPY MAY HAVE BEEN ALTERED TO REDACT CONFIDENTIAL PERSONAL INFORMATION AS REQUIRED BY TEXAS GOVERNMENT CODE 552.147.

    IN TESTIMONY WHEREOF, WITNESS MY HAND AND OFFICIAL SEAL OF OFFICE GIVEN IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ON THIS _16th_ DAY OF _July_ A.D., 20 _14_ .

GERARD RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS

BY: _Edna Cruz Morley_
Deputy County Clerk

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF RACE, COLOR, RELIGION, SEX, HANDICAP, FAMILIAL STATUS OR NATIONAL ORIGIN IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.